KOERNER LODGE, NO. 6, KNIGHTS OF PYTHIAS ET AL.
*v.* THE GRAND LODGE, KNIGHTS OF
PYTHIAS OF INDIANA.

[No. 17,800.   Filed January 28, 1897.]

BENEFICIAL ASSOCIATIONS.— *Surrender of Charter by Subordinate Lodge.—Evidence.*—Where on the trial of a cause brought by a beneficial association or order against a subordinate lodge to recover possession of certain money and property on the ground that defendant lodge had voluntarily surrendered its charter, it having

been shown that at a regular meeting of defendant lodge a resolution had been adopted withdrawing from the order, and it having been further shown that under the constitution and laws of the order no subordinate lodge could withdraw from the order, except by special permission, so long as nine members remained who were willing to continue, it is error to exclude evidence to show that eleven members of the subordinate lodge, not present at the time the withdrawal resolutions were adopted, formally protested against such action, at the subsequent meeting of the lodge when the minutes, including the withdrawal resolutions, were adopted.

SAME.—*Voluntary Dissolution.*—A beneficial association may be dissolved in the manner provided in its charter or constitution, and in the absence of any provision on the subject it can voluntarily be dissolved by the unanimous vote of its members.

SAME.—*Diverting Funds.—Ultra Vires.*—The members of a beneficial association have no power to divert the funds and property of their lodge from the specified purposes to which, under the laws of the order, the same had been dedicated, and a resolution seeking to so divert such funds and property is *ultra vires.*

From the Marion Circuit Court. *Reversed.*

*Florea & Seidensticker* and *D. W. Howe,* for appellants.

*Chambers, Pickens & Moores* and *J. B. Cockrum,* for appellee.

JORDAN, C. J.—The appellee, by its complaint, alleges that it is a corporation organized pursuant to the laws of Indiana and a charter issued by the Supreme Lodge, Knights of Pythias of the World, and that the appellant is a subordinate lodge of this order, deriving its powers from and subject to the jurisdiction of the grand and supreme lodges. That appellant is duly incorporated under the laws of Indiana, and its co-appellants are its officers and trustees. The complaint then proceeds to describe the objects of the order and the character of its organization, and the control of the appellee over subordinate lodges, and the power which it has to suspend or dissolve the

same, and the provisions regulating the surrender of
the charters of subordinate lodges, whereby upon such
dissolution or suspension it becomes the duty of the
officers thereof to turn over all of the lodge property
and effects to the grand chancellor of the grand lodge,
and in the event the lodge is not reinstated within one
year, the grand lodge becomes the absolute owner of
said property and effects. The pleading next alleges
that the appellant has seceded from the jurisdiction of
the grand lodge and has been dissolved and disbanded
as a subordinate lodge of the order of the Knights of
Pythias. The facts upon this point are averred as
follows: "That on or about the — day of ————
the said defendant, Koerner Lodge No. 6, Knights of
Pythias, was, by authority of a dispensation from
the Grand Lodge, Knigths of Pythias of Indiana, duly
organized as a member of said order, and adopted and
accepted all of the provisions and requirements of the
constitution, laws, rules, regulations, and usages of
said order, and was granted a charter by said grand
lodge; that said Koerner Lodge continued as a subor-
dinate lodge of said order, subject to the jurisdiction
of the plaintiff, accepting, adopting, and acting upon
the laws, rules, regulations, and usages of said order
until on or about the 10th day of September, 1894,
when the said Koerner Lodge No. 6, Knights of
Pythias withdrew and seceded from the jurisdiction
of the said grand lodge and dissolved and disbanded
as a subordinate lodge of the order of Knights of
Pythias. * * * * The said Koerner Lodge No. 6,
Knights of Pythias seceded and withdrew from the
order of the Knights of Pythias and dissolved and dis-
banded as a subordinate lodge of the said order be-
cause of the fact, as plaintiff is informed and believes,
and upon such information and belief charges the

same to be true, that the Supreme Lodge of the Knights of Pythias of the World prohibited the use of the ritual of said order in German, which rule of said supreme lodge the said Koerner Lodge No. 6 refused to obey."

By other averments it is shown that at the time of the alleged dissolution and disbandment of appellant, it had in its custody and charge belonging to the widows and orphans' fund the sum of $1,000.00, and also other property of the probable value of $2,000.00 and over. It is then alleged that the officers and members of Koerner Lodge have organized, or attempted to organize, another society, and that its officers and trustees intend to turn over the money and property mentioned in the complaint to this new society.

The prayer of the complaint in substance is for a decree requiring the defendants, now appellants, to surrender to the appellee all of said property, effects and money, and that the latter have judgment for the amount thereof, and that appellants and each of them be restrained from transferring or disposing of said money and other property, and that on final hearing they be enjoined from withholding the same from the appellee, etc.

At the commencement of the action the lower court issued a restraining order as prayed, to continue in force until the final hearing.

Appellant having unsuccessfully demurred to the complaint, filed its answer in two paragraphs, the first being a denial. The second set up facts tending to negative some of the material allegations of the complaint. A demurrer was sustained to this paragraph of the answer, and the issues were then joined under the denial. A trial by the court resulted in a finding and judgment for appellee as against all of the appellants. Upon the evidence the court made the follow-

ing finding: "The court being fully advised finds that the allegations of the complaint herein are true. And the court further finds that the defendant, Koerner Lodge Number Six (6), Knights of Pythias, on the 10th day of September, 1894, was, by unanimous vote of said lodge duly assembled, voluntarily dissolved and its charter surrendered, and its connection with the order of the Knights of Pythias severed and terminated; that at the time of said dissolution it had in its possession and under its control, belonging to it as such subordinate lodge, the following funds and property, to-wit: [Here follows a description of the money and property belonging to appellant.] And the court further finds that upon such dissolution said funds and property belonged to and became the property of the plaintiff, and plaintiff became entitled to the possession thereof."

There is a further finding that Koerner Lodge has not been resuscitated, and under the constitution and laws of the Order of Knights of Pythias its property now belongs to the appellee, to be disposed of by it in accordance with its constitution and laws.

Appellants filed separate motions for a new trial, assigning among other reasons that the finding is not sustained by sufficient evidence, and that the court erred in excluding certain evidence. Each of these was overruled and exceptions reserved. The errors assigned in this court are predicated upon the rulings of the court on the demurrers to the complaint and answer and in overruling the several motions for a new trial.

Appellants' learned counsel contend that the court erred in sustaining the demurrer to the second paragraph of answer, and in their very able argument upon this question urge that even if it be conceded that Koerner Lodge has been dissolved, as alleged in

the complaint, its property nevertheless belongs to its members and not to the grand lodge. All that need be said upon the action of the court in sustaining the demurrer to this paragraph of the answer is that, so far as the facts therein averred were pertinent as a defense, they were admissible under appellants' general denial, hence, even if the ruling of the court was erroneous, the error was harmless. *The Jeffersonville Water Supply Co.* v. *Riter, ante,* 521, and the authorities there cited.

Appellants also insist that the evidence does not sustain either the allegations of the complaint or the finding of the court. The complaint proceeds upon the theory that appellant, Koerner Lodge, on September 10, 1894, by its own action dissolved and disbanded, and by reason thereof, under the laws, rules and regulations of the Order of Knights of Pythias, and especially by virtue of the constitution of appellee, the latter became the owner in trust and entitled to the possession of the money and property held by the former at the time of its alleged dissolution.

In *Cummings* v. *Citizens' etc., Assn.,* 142 Ind. 600, in considering the theory of a case, we said: "This theory, the complaint must outline, the evidence sustain, and the law support." The question, therefore, as to the right or title of appellee to the money and property, as presented by the theory of its complaint, must ultimately depend upon whether the evidence sustains the alleged dissolution of appellant as a subordinate lodge. The constitution, laws and rules of the grand lodge, as exhibited in the complaint, do not show that appellee can acquire any right to the possession of the money and other property of a subordinate lodge until it in fact has been dissolved or suspended. Therefore, if the evidence, under the law, does not sustain the alleged dissolution of Koerner lodge,

the question as to appellee's right to the property need not be determined. The finding discloses that, in the opinion of the court, the evidence established that appellant, on September 10, 1894, had voluntarily dissolved as a lodge and surrendered its charter. We may therefore proceed to an examination of the evidence given in the lower court, and address our inquiry to its sufficiency to sustain the finding, and also to the alleged error in excluding the evidence in dispute. At the trial appellee introduced in evidence parts of the constitution of the Grand Lodge of Indiana, and other laws, rules, and regulations of the Order of Knights of Pythias, together with the charter and articles of incorporation of appellee, and the charter issued to appellant by the grand lodge. It is shown that Koerner Lodge No. 6 was organized at the city of Indianapolis, Indiana, in 1869, pursuant to authority from the supreme lodge; that subsequently a charter was granted to it by the Grand Lodge of Indiana. Prior to 1892, it was permitted to print its constitution and other laws in the German language, and the minutes of its meetings were kept and recorded in that language, and a German ritual was used in conferring the degrees of the order, for the reason that many of its members did not understand the English language. In 1892 the supreme lodge enacted a law requiring that the rituals used by all lodges, and the other work thereof, should be in the English language. Among the provisions of the constitution and laws of the grand lodge for the government and control of subordinate lodges are the following:

"Sec. 3. When a lodge is suspended or dissolved it shall be the duty of its last chancellor commander and all other officers to deliver up its dispensation or charter, books, jewels, funds, emblems, regalia and all other property and effects, together with a list of all

members of said lodge in good standing at the time of its dissolution, to the grand chancellor or his deputy, and if any officer or member having custody of any part of said property or effects refuses to surrender the same, he shall forever be excluded from the membership of the order.

"Sec. 4. Any lodge may voluntarily surrender its charter by a vote of the lodge, provided there are less than seven members who are willing to continue.

"Sec. 5. All funds and effects received by the grand lodge from a dissolved or suspended subordinate lodge, shall be held by the grand lodge for a period of one year, and in case said subordinate lodge shall be reinstated within one year, said funds and effects shall be restored to said subordinate lodge, on payment by said subordinate lodge of the actual expenses incurred in obtaining possession, shipment, care and custody of said effects. And in case such subordinate lodge shall not be reinstated within one year after its dissolution, then the grand lodge may sell and dispose of the effects of said subordinate lodge, and all money and effects received from such lodge shall become the absolute property of the grand lodge.

"Article 1, Sec. 24. All lodges working under a charter of this grand lodge shall enforce a strict adherence to the work of the order according to the forms furnished by the Supreme Lodge, Knights of Pythias of the World, and the Grand Lodge of Indiana; and they shall neither adopt nor use any other charges, lectures, rank work, form of installation ceremonies, nor regalia or jewels than those prescribed by the ritual and law of the supreme lodge and provided by the grand lodge."

A rule of the supreme lodge, adopted in 1872, which is also incorporated into the constitution of appellee, provides as follows:

"No subordinate lodge shall be allowed to dissolve or surrender their charter by their vote as long as nine members remain willing to sustain the lodge, except by permission of the grand lodge, or during the recess of the grand lodge, by the grand chancellor of the jurisdiction."

There are other laws of the grand lodge in evidence providing that no subordinate lodge shall be less than seven members, and that seven members present at a meeting shall constitute a quorum for the transaction of business.

On September 8, 1894, the keeper of the records and seal of appellant mailed to each of the members thereof a postal card, notifying him to be present at the lodge hall on Monday evening, September 10, 1894, stating therein as follows: "To consider a question on which the existence of the lodge depends. If you have any interest in the welfare of the lodge you certainly will be present."

On September 10, 1894, it appears that appellant was composed of 160 members, and at a regular meeting, held on the night of that date, at its hall in the city of Indianapolis, at which about sixty members were present, a certain resolution relative to the lodge severing its connection with the order was by those present unanimously adopted. It is apparent from the recitals in the preamble to this resolution that the members present on this occasion were indignant and felt aggrieved by reason of the action of the supreme lodge and the report of the supreme chancellor relative to German lodges of the order. The following is the resolution adopted at this meeting:

"Resolved. 1st. That Koerner Lodge No. 6 sever connection with the Order of Knights of Pythias.

"2d. That we do not impair the right of our members belonging to the endowment rank.

"3d. That we turn over our entire property to the German Mutual Aid and Benefit Society of Indiana."

Albert R. Holland, a witness in behalf of appellee, testified in substance that he was janitor of the hall and was acting as outer guard at the meeting in question, and that after the lodge had adjourned some three or four of the members came out of the hall and said to him, "We have quit, we give up," and one of them handed to him the lodge's charter and told him to give it to Mr. Bowers, who was then the keeper of the records and seal of the grand lodge; that the charter had been hanging in the lodge room before it was taken down by some one and turned over to him; that he put it in one of the rooms connected with the hall and reported to Mr. Bowers, and "after a day or so," at the request of the latter, witness delivered the charter to Bowers the grand keeper of records and seal. The latter testified that on Wednesday after the meeting, being September 12, he went to the lodge room of the appellant, that the charter at that time was in the ante-room, and that he directed Holland, the janitor, to bring it to his office, which he did, and that it has remained there since that time; that when Schmidt, a member of the lodge, demanded possession of it he declined to comply with the demand. This, in the main, was all the evidence introduced by appellee tending to show the dissolution of Koerner lodge and the surrender of its charter.

To rebut the evidence of appellee upon the point that the charter had been surrendered, appellant introduced seven witnesses, who were members and present at the meeting on September 10, to-wit: William Brandt, the chancellor commander; John Weber, the vice chancellor; August Woerner, master of finance; Henry Zimmer, Gustav Pink, Charles Pink, Charles J. Schmidt and Michael Speer.

The substance of the testimony of these witnesses is as follows: After the meeting of September 10 had adjourned, William Brandt, the chancellor commander and presiding officer, left the hall, the charter then hanging in its usual place on the wall, and while the members were getting ready to leave, some being already in the ante-room, Henry Zimmer, who was not then an officer of the lodge, without any direction from any one, took the charter from its accustomed place and handed it to John Weber. At the same moment August Woerner, the master of finance, stepped up and said, "Here, this charter stays here; we are not going to take the charter along." They tried to hang it on the wall again, when Woerner remarked that they need not mind; that "Al." (Holland, the janitor) had a stepladder, and he would hang it up again. Weber then took it and set it up on the stage back of the vice chancellor's chair, where it remained after all the members had left the hall, the last to leave being Weber, Koerner, Speer, William Dehue and Hugo Klingstein. At the meeting of September 24, 1894, Charles J. Schmidt was appointed a committee to see Bowers about the charter. He saw Bowers, who told him that the charter was in his possession and that he did not like to give it up during the pendency of the suit, but that it was immaterial whether the lodge had its charter or not; that it was not suspended and could go ahead with its meetings "and everything would be forgotten, or something to that effect."

There was evidence introduced tending to show that the minutes of proceedings had at a lodge meeting were usually read for approval at the next meeting, and that those of September 10, 1894, were not read or approved at that meeting, but were read for the first time on September 24.

The contention of counsel for appellant, in the lower

court, was that at the meeting held on September 10, the members present became excited over the action of the supreme lodge in depriving them of the use of German rituals, and also in regard to a report made by the supreme chancellor which they considered as an insult to the German members of the order, and under this excitement they did adopt the resolution in controversy; that the trustees did not in fact resign nor was any of the appellant's property turned over to the German Mutual Aid Society, but said property is still held by the trustees of the lodge, who are co-appellants in this appeal. Appellant offered evidence to prove that on September 24, 1894, being the night for a regular meeting of Koerner lodge, it again assembled at its regular place of meeting, all of its officers and forty-six members being present. That after certain corrections were made in the minutes of September 10, 1894, they were finally adopted as corrected. That the meeting of September 24 was opened in due form in accordance with the constitution and laws of the order, and that it proceeded to the transaction of its usual business. That at this meeting the minutes of September 10 were read for the first time, and that they were not approved as originally written, and that certain erasures appearing in the minutes of September 10, as introduced by appellee, were made by the order of the lodge at the meeting of September 24 for the purpose of correcting the minutes of the former proceeding. The proceedings of the meeting of September 24 were recorded in the same record containing the minutes of September 10. At the meeting of September 24 it appears by the offered evidence that Mr. Schmidt, one of the members present, was appointed a committee to see Bowers and have the charter returned to the lodge room. Appellants, also, offered to show that at this meeting eleven

members then present, but who were not present on September 10, filed and had recorded their written protest against the action of the lodge in attempting to sever its connection with the order. This protest is as follows:

"The undersigned, members of Koerner Lodge No. 6, Knights of Pythias of Indiana, who were not present at the meeting of said lodge on Monday night, September 10, 1894, hereby protest against the action taken by the members of said Koerner Lodge No. 6 on said evening, whereby they resolved to sever the connection of said lodge with the Order of Knights of Pythias.

1. FRED RASEMAN.        6. GEO. SCHOPPENHORST.
2. WILLIAM RATHORT.     7. WOLF MORRIS.
3. JOHN KOEPPEN.        8. ABRAHAM MARX.
4. CHAS. ALBRECHT.      9. GOTTLIEB DIPPEL.
5. HENRY MILLER.       10. WM. SOGEMEIER.
              11. HENRY SCHAUB."

All of the above evidence offered by the appellants was, over their exceptions, excluded by the court, and the court also refused to permit the appellant to introduce the record of a meeting of October 1, 1894, which was held on the regular night and at the regular place of meeting.

If, under the evidence given, it can be said that before the commencement of this suit Koerner lodge had dissolved and surrendered its charter, and ceased to longer exist as a working lodge, this result must be attributed solely to the action of the minority of its membership in adopting the resolutions on September 10, 1894. In the absence of this certainly it can not be asserted that there is other evidence sufficient to show that the lodge as a body had invested Holland, the janitor, with authority to surrender its charter, or that Bowers, in his official capacity, had

any warrant to accept and retain it. It is also shown that the minutes of the meeting of September 10 were not made up, read, corrected and approved until the meeting in controversy on the 24th inst. Appellants offered to show that at this meeting the minutes of the previous one were read for the first time, and that certain corrections were made therein relative to the proceedings on September 10 upon the resolution in dispute. At this meeting, it appears from the evidence offered and excluded, that eleven members who were not present on September 10 entered and had recorded their protest against the action of the lodge taken at the previous meeting. Under the provisions of the constitution of the grand lodge and the laws of the supreme lodge, which govern and control the action of a subordinate lodge, it is disclosed that the latter may surrender its charter when there are less than seven of its members who are willing to continue, and a subordinate lodge is also prohibited from dissolving or surrendering its charter so long as nine of its members are willing to sustain it, except by permission of the grand lodge, or by permission of the grand chancellor during a recess.

There is no claim that appellant had been dissolved by virtue of any action or proceedings had by the grand lodge in accordance with its constitution or other canons of the order prior to the beginning of this suit, but the adoption of the resolution is relied upon as *ipso facto* effecting a dissolution of Koerner lodge, and thereby giving the former, under its constitution, the right to the possession of its property, regardless of any subsequent action of the lodge, or of nine or more of its members in opposition to the alleged dissolution.

The authorities affirm that a beneficial association may be dissolved in the manner provided in its charter

or constitution, and in the absence of any provision on the subject it cannot voluntarily be dissolved except by the unanimous vote of its members. Am. and Eng. Ency. of Law, Vol. 2, p. 178.

We are of the opinion that the subsequent action of the Koerner lodge, at the meeting of September 24, as offered to be shown by the appellant, was, under the circumstances, proper and legitimate.

It appeared that the minutes of the meeting of September 10 were first read and presented for approval at the meeting on September 24, and the offer was to show that certain corrections in regard to the proceedings had at the former meeting were then made. The meeting of September 24 seems to have been the first opportunity for the lodge to avail itself of the right to correct the record of the former meeting so as to make it conform to what had actually occurred. Again, it appears that this meeting was also the first opportunity which the eleven members who were absent on September 10 had to protest and object to the action of the minority of the lodge's membership at this latter meeting.

As we have seen, the laws of the order forbid a voluntary dissolution or surrender of a lodge's charter in the event there are nine members willing to continue the organization. The policy or purpose of this rule manifestly is to prevent a dissolution of a subordinate lodge unless it be effected as near as practicable by unanimity upon the part of its members. If there are nine or more loyal ones, who are willing to sustain their organization as a lodge, and continue its existence and operations in obedience to the rules, regulations and laws of the order, then a voluntary dissolution of the lodge, as such, cannot result, even though it be the will and desire of a large majority of its members, except by the permission of the grand

lodge or its chancellor. This must be true if any controlling force or effect in this respect is to be given to the particular rule or law in question. This is a vital point in the case at bar, for if it is shown that these eleven protesting members are willing to sustain and continue the existence of their lodge, then it is evident, we think, that the vote of its members at the meeting of September 10 upon the adoption of the resolution in controversy could not *ipso facto* result in its dissolution or work a surrender of its charter. The evidence relative to the action taken by these protesting members, therefore, was very material in order to show, in consideration of the rule to which we have referred, that the action of the lodge, relied upon by the appellee, had not actually effected a voluntary dissolution and disbandment, as claimed by the appellee, and upon which it bases its right to the money and property involved. It would seem that nine members, the number designated by the law, being in excess of a quorum and also of the number required to constitute a lodge, would still continue the organization of the lodge and entitle it to hold its property and effects, notwithstanding the act of those, in deciding to withdraw or sever their fraternal connections. See *Gorman* v. *O'Connor*, 155 Pa. St. 239, 26 Atl. 379; *McFadden* v. *Murphy*, 149 Mass. 341, 21 N. E. 868; *Chamberlain* v. *Lincoln*, 129 Mass. 70.

The stockholders of a corporation which is chartered or organized under the laws of a State, as a general rule, cannot effect a voluntary dissolution except by a unanimous vote. Beach on Private Corporations, Vol. 2, section 781; Cook on Stockholders and Corporation Law, section 629.

That part of the resolution which declared in favor of turning appellants' property over to the German Mutual, etc., Society was *ultra vires*, and would not

warrant or justify its trustees and officers in carrying it into effect. The authorities fully affirm and sustain the doctrine that appellant's members had no right or power to divert the funds and property of their lodge from the source or specified purposes to which, under the rules and laws of the order, the same had been dedicated. Niblack on Accident Ins. and Benefit Societies, section 121; *Duke* v. *Fuller*, 9 N. H. 536, 32 Am. Dec. 392; Bacon on Benefit Societies, section 39; *State Council, etc.*, v. *Sharp*, 38 N. J. Eq. 24; *Altmann* v. *Benz*, 27 N. J. Eq. 331; *Grand Lodge K. of P.* v. *Manhattan Sav. Inst.*, 34 N. Y. Supp. 253.

We are of opinion that the court erred in excluding the evidence herein indicated as offered by the appellant, and the final judgment is therefore reversed, and the cause remanded, with instructions to the lower court to grant appellants each a new trial, and for further proceedings in accordance with this opinion, the restraining order to remain in force until the further order of the lower court.