GIOVANNI DI SILVESTRO, etc., as President, etc., and Others, Plaintiffs, v. SONS OF ITALY GRAND LODGE and Others, Defendants.

Supreme Court, Erie County, May 14, 1927.

Corporations — membership corporations — action in equity to determine status of Sons of Italy Grand Lodge of New York — under constitution of Supreme Lodge and Laws of 1923, chap. 217, attempted secession by Grand Lodge from Supreme Lodge was ineffective — Laws of 1923, chap. 217, gave Grand Lodge right to " affiliate itself with another body or association as its parent body "— resolution enacted declaring independence of Grand Lodge was not passed in compliance with said statute — Laws of 1923, chap. 217, giving right of Grand Lodge to secede from Supreme Lodge violates constitutional restraint imposed upon impairment of contractual rights of members of Supreme Lodge — officers and members of Grand Lodge chosen at meetings at New York and Schenectady have no right to hold office — convention of Grand Lodge should be called for express purpose of electing members of Grand Council to manage affairs of Grand Lodge — since court of equity has right to maintain jurisdiction of controversy, power vests in court to order new election.

This is an action in equity to determine the rights and status of a fraternal organization known as The Sons of Italy Grand Lodge of New York, which was organized in pursuance of the provisions of the constitution of the parent or Supreme Lodge of the order. The constitution of the Supreme Lodge, among other things, provides that such Grand Lodge " is dependent on and tributary to the Supreme Lodge " and that " every Grand or State lodge in drawing up its internal regulations shall fully abide by the general laws, legislating only as to such matters as have not been legislated upon by the Supreme Lodge, and in such manner as not to interfere with the financial interests of the Supreme Lodge, or with the moral interests of the Order, and the Organic Structure of same." Notwithstanding the fact that the provisions of the constitution indicate that the whole scheme of organiaztion contemplated and provided for a general fraternal order of which the Grand Lodges of the various States should be component parts, subject to the general supervision and control of the Supreme Lodge or governing body, the Grand Lodge, at a meeting conducted in the city of New York in August, 1925, adopted a resolution to the effect that said Grand Lodge " cease immediately to be affiliated with the Supreme Lodge of the Sons of Italy." Since that time the Grand Lodge has assumed to act independently of the Supreme Lodge in the management and control of its affairs. It is claimed by the Grand Lodge that by virtue of the provisions of chapter 217 of the Laws of 1923, purporting to validate and continue the incorporation of said Grand Lodge under the Membership Corporations Law, the incorporation of which was never recognized by the Supreme Lodge, the Grand Lodge became and is an independent corporation authorized and empowered to act independently of the Supreme Lodge and that it cannot be called to account for any of its acts by the Supreme Lodge or any member thereof, and that under the provisions of the legislative act it has full power and authority to sever its relations with the parent Lodge.

The action of secession from the Supreme Lodge, taken at the New York meeting in pursuance of the provisions of the act of 1923, was illegal and ineffective to

accomplish a severance of relations with the parent body and v as unauthorized by said act, for the act conferred no power or authority upon the Grand Lodge to sever relations with the Supreme Lodge, except on affiliation with some other body or association having objects and purposes consistent with its own which was not done.

Moreover, the action at the New York meeting was unauthorized and its proceedings were invalid, since it appears that while the duly designated place for holding the convention was in Schenectady the officials of the Grand Lodge, prior to the convening of the convention at Schenectady, assumed to change the place of holding the session from that city to the city of New York, in the absence of any authority in said officials to change the place of meeting.

Therefore, no secession was accomplished and the Grand Lodge still is affiliated and connected with and is a component part of the Supreme Lodge of the Sons of Italy in America. It must necessarily follow that the officers or members of the Grand Council of the Grand Lodge chosen at the New York meeting were never duly elected and have no right to hold office as such by virtue of such election.

Furthermore, the secession of the Grand Lodge from the Supreme Lodge should not prevail for, if carried out, it would impair and destroy the contractual relations existing between the Supreme Lodge and its members, the District Lodges and the Grand Lodge. Moreover, such an interference with the contract rights of the members and subordinate lodges impairs constitutional rights protected and guaranteed by the Constitution of the United States and consequently the act of 1923 which seeks to give the Grand Lodge the right to secede from the Supreme Lodge violates the constitutional restraint imposed upon the impairment of contractual rights and is unconstitutional to that extent.

The members of the Grand Council of the Grand Lodge chosen and elected at the convention held at Schenectady by the adherents of the Supreme Lodge at the identical time that the insurgent body was in convention in New York cannot be regarded as the duly elected members of the Grand Council, nor are they entitled to administer the affairs of the Grand Lodge, since the proof shows that a quorum was not present at the Schenectady convention.

A convention of the Grand Lodge should be called for the express purpose of electing members of the Grand Council to manage the affairs of such Grand Lodge pursuant to the regulations of the Grand Lodge and when so elected the Grand Lodge and its acting Council and officers should transfer to such newly-elected officers and Council the property and effects of the Grand Lodge and account therefor.

Since this court, as a court of equity, has a right to maintain jurisdiction of the controversy for the purpose of administering complete relief, power vests in the court to order a new election, though such a determination is beyond the relief asked for in the complaint.

ACTION involving a dispute between a parent fraternal order, certain of its district lodges and individual members as to the rights and status of what is known as the Grand Lodge of the State of New York immediately subordinate to the Supreme Lodge of the parent order.

*Hardin & Hess* [*Harold B. Elgar* of counsel], for the plaintiff Giovanni Di Silvestro, as president, etc.

*Hughes, Rounds, Schurman & Dwight,* for plaintiff Supreme Lodge Order of Sons of Italy in America.

*Miller & Hubbell,* for plaintiffs Giovanni Rossi, as treasurer, etc., and others.

*Salvador J. Capecelatro,* for Alfonso Pucci, as president, etc.

*Philip Bongiorno [Clayton M. Lusk of counsel],* for the defendants.

WHEELER, CHARLES B., Official Referee.   These different lodges, supreme, grand and district, are known and designated by names or titles in the Italian language.   For convenience, however, in discussing this case the referee has and will refer to them by their equivalent in the English tongue, and call the parent or Supreme Lodge, the National Lodge or Order, the Grand Lodge as the State or Grand Lodge, and the lodge next below as the District Lodge.

The litigation resolves itself into a struggle for control between two distinct parties in the order.

One, if not the main question, to be decided in this litigation, is whether the defendant The Sons of Italy Grand Lodge of New York is such an independent corporation that it owes no allegiance or duties to the National or general Order of the Sons of Italy in America.

The defendants contend its relation or connection with the General Order was, as counsel express it, only a *"conventional"* one.

As claimed and stated in defendant's points said defendant was " ever since its formation and incorporation in the year 1911 a complete, distinct, sovereign, independent, self-sufficient, membership corporate fraternal organization, recognized as such by the laws of this State."

Plaintiffs' counsel on the other hand contend that the Order of the Sons of Italy in America constituted a National body with which the Grand Lodge, and its constituent members were affiliated by contractual relations, and the National Order is a mutual fraternal benefit organization created and conducted upon the lodge system with a supreme authority, and subordinate members, and that the Grand Lodge is dependent upon and tributary to the National Order, and, therefore, cannot secede or withdraw from the National Order without violating and severing the contractual relations existing between it, and the subordinate or District Lodges, and the individual members of the Order.   These questions call for a brief statement of the facts relating to the organization of the Order, of the Supreme Lodge, of the Grand Lodge, and of the District Lodges, and of the relation each in turn bear to the other.

The history of the organization is substantially this.   The Order of the Sons of Italy in America was formed about the year 1905.

Supreme Court, May, 1927.    [Vol. 129

It is a fraternal organization of persons of Italian birth or ancestry residing in the United States, for the purpose of promoting their moral and social welfare, their loyalty to the institutions of the United States, and for the payment of certain sick and death benefits. It has something over 150,000 individual members living in the various States of the Union.

The National or General Order adopted a fundamental constitution and general laws for the government of the Order of the Sons of Italy in America. This constitution provides for a Supreme or National Lodge, for Grand or State Lodges, and District or local lodges.

The unit of membership is the individual who joins some local or District Lodge. These District or local lodges in each State send delegates to all annual conventions, which elect certain officials or delegates who become the governing officials of the State or Grand Lodges and are styled the Grand Council, and the State or Grand Lodges in turn elect supreme delegates to a Supreme Convention of the parent order which in turn elect supreme officials who become the supreme officials of the National Order or Supreme Council. Thus the Grand Lodges in the various States become intermediate entities between the so-called Supreme Lodge and the District Lodges of the Order.

The national constitution provides for the establishment of Grand or State Lodges where there exist " at least 5 district lodges " but declares such Grand Lodge " *is dependent on and tributary to the Supreme Lodge, and in whose life it participates through representatives styled 'Supreme Delegates.'* "

The constitution of the Order further provides " every Grand or State Lodge in drawing up its internal regulations shall fully abide by the general laws, legislating only as to such matters as have not been legislated upon by the Supreme Lodge, and in such manner as not to interfere with the financial interests of the Supreme Lodge, or with the moral interests of the Order, and the Organic Structure of same."

In pursuance of these constitutional provisions governing the general Order the defendant The Grand Lodge of the State of New York was instituted and organized, and this State Lodge in turn adopted certain by-laws or regulations for its governance.

These regulations start with the declaration that the name of the entity is the "*Grand Lodge of State of New York, Order Sons of Italy in America,*" clearly indicating its purpose and intention to be an integral part of the National Order, and not independent therefrom. It declares " *the objects of the Order are the ones laid down in the fundamental laws of the Supreme Lodge.*"

In relation to District Lodges it provides that regulations adopted by them have the force of law if they do not " *conflict with the fundamental laws of the Supreme Lodge,*" etc.

Under the heading of rights and duties of brothers it declares they are " *to obey strictly the provisions of the regulations* * * * of the *Supreme Lodge.*" These regulations further provide the Grand or State Lodge has power and authority "*To make and enact laws concerning the administrative economic and social welfare of the Order within the State of New York, provided that no laws of the Grand Lodge are to conflict with the interests of the Supreme Lodge.*"

There are also provisions by which a member of the Order belonging to a District Lodge may be transferred from a District Lodge to another lodge of the Order in another State. We have called attention to these provisions of the constitution of the General or National Order of the Sons of Italy, and of the regulations governing the Grand or State Lodge of New York for the purpose of showing the relation of the Grand Lodge to the parent or National Order was and is not simply " *conventional* " as claimed but that the whole scheme of organization contemplated and provided for a general fraternal order, of which the Grand Lodges of the various States should be component parts subject to the general supervision and control of a Supreme Lodge or governing body designated the Supreme Lodge, electing by methods designated a supreme council constituting an executive board.

It should be borne in mind too that the Grand Lodge of the State of New York in the same way had an executive council or grand council which constituted the executive officers of the State Grand Lodge, and that this council saw to it that the laws and regulations of the Order were observed and carried out.

Until the secession or attempted secession of the Grand Lodge from the Supreme Lodge the Grand Lodge participated in the affairs of the Supreme Lodge, paying its regular dues to the National Order, and recognizing its authority in all matters within its jurisdiction and powers.

The referee is, therefore, forced to the conclusion that the claim of the defendants that the Grand Lodge was an entirely independent entity is not well taken, unless there be something in the incorporation of the Grand Lodge giving or conferring such an independent existence, which placed it beyond the authority and control of the General Order. It became a matter of good policy and good business that the Supreme Lodge, the State or Grand Lodges, and the District Lodges should incorporate. Each in turn became the owners of certain properties, in which the other lodges had only a general interest. These properties were used by these various

lodges in promoting each of their respective interests, while the prosperity of each in turn furthered the interests and strength of the General Order. Consequently the Supreme Order incorporated in 1905 under the Membership Corporations Law of the State of New York.

Grand Lodges were also permitted to incorporate provided they complied with the constitution of the General Order.

In 1911 certain officials of the Grand Lodge of the State of New York attempted to incorporate under the Membership Corporations Law. In any event on or about February 2, 1911, they filed a certificate which assumed to incorporate the Grand Lodge. The plaintiffs contend this incorporation was unauthorized and invalid, and was never recognized by the Supreme Lodge or by the supreme council. Much evidence was given on the trial of this action touching what was done and not done after the certificate of 1911 was filed with the Secretary of State. Anyway, in 1923, a bill was introduced and passed by the Legislature of the State of New York purporting to validate and continue such incorporation. This act constitutes chapter 217 of the Laws of 1923, and reads as follows:

"AN ACT to validate and continue the membership corporation known as Sons of Italy Grand Lodge, and to define its powers and purposes.

" Became a law April 9, 1923, with the approval of the Governor. Passed, three-fifths being present.

"*The People of the State of New York, represented in Senate and Assembly, do enact as follows:*

" Section 1. The corporation known as Sons of Italy Grand Lodge, duly incorporated on or about the second day of February, nineteen hundred and eleven, is hereby validated and continued as a membership corporation. Notwithstanding any provisions of the certificate of incorporation, constitution or by-laws of such corporation, such corporation shall have the following rights, powers and purposes in addition to those set forth in its certificate of incorporation:

" 1. To take, hold and lease or acquire real property to be used in the furtherance of its purposes, to improve the same for such purposes and to dispose of the same if it be not required for such purposes;

" 2. To authorize and establish throughout the state subordinate branches or lodges and to grant charters to such branches or lodges and thereby make the members of such branches or lodges members of such corporation; for cause to suspend or dissolve the charter so granted by it and in the event of such suspension or dissolution to

take over all the funds, property, books, papers and paraphernalia of such subordinate branch or lodge; to discipline by fines, penalties or suspension or dismissal the officers or members of such subordinate branches or lodges for neglect to comply with the constitution, by-laws, rules or regulations of such corporations;

" 3. To aid and assist all aliens who are lawfully entitled to and apply for entrance to this country;

" 4. To afford assistance and relief to its members and their families in all cases where such assistance and relief is needed and in such manner as may be deemed proper; and for such purpose to do charitable or eleemosynary work among its members and their families and establish and maintain as part of its organization a welfare department or agency.

" 5. To encourage and promote education among its members.

" 6. To institute and conduct courses of instruction and education, and other educational methods for the Americanization of its members and their families;

" 7. To establish, maintain, collect, raise by assessment on members, invest and disburse a mortuary fund or funds and to pay out of the same upon the death of a member as a death benefit such sum as may from time to time be determined;

" 8. To raise such sums as may be necessary for such mortuary fund or for other purposes of the corporation by collecting the same as dues or assessing the same upon its members;

" 9. To affiliate itself with another body or association, incorporated or unincorporated, as its parent body and to become a lodge or branch of such body in so far as the purpose and objects of such body are consistent with its own purposes and objects; and to discontinue such affiliation and sever connection with such body;

" 10. To formulate and enforce by appropriate means its constitution, by-laws, rules and regulations for carrying out its purposes.

" Such corporation shall be deemed a corporation and such branches or lodges shall be deemed associations under the provisions of subdivision seven of section four of the tax law.

" § 2. This act shall take effect immediately."

It is claimed by the defendants that by virtue of this act the Grand Lodge of the State became and is an independent corporation authorized and empowered to act entirely independent of the Supreme Lodge or of its council, and that it cannot be called to account for any of its acts by the General or National Order or by any District Lodge or any member of the order, and that by the terms of the act it had and has full power and authority to sever its relations with the parent Order.

With this view of its rights the Grand Lodge at a meeting held at the Star Casino in the city of New York in August, 1925, adopted the following resolution:

" That the Sons of Italy Grand Lodge Incorporated, cease immediately to be affiliated with the Supreme Lodge of the Sons of Italy in America, Inc., or however else such Supreme Lodge may be named."

Since that time the defendants have assumed to act independently of the Supreme Lodge in the management and control of the affairs of the Grand Lodge, and to assert the right and authority to do so. This assumed right is challenged by the plaintiffs.

In the first place it is a fair question whether the action at the meeting held at the Star Casino legally accomplished the severance of relations with the general order or was authorized by act of 1923. If we examine the legislative act of 1923, we find it provides, subdivision 9 of section 1, the defendant Grand Lodge may " affiliate itself with another body or association, incorporated or unincorporated, as its parent body and to become a lodge or branch of such body in so far as the purpose and objects of such body are consistent with its own purposes and objects; and to discontinue such affiliation and sever connection with such body."

The action at the Star Casino meeting did not undertake to affiliate the Grand Lodge with any other body or association. It simply declared its independence of the Supreme or parent lodge of the Order. So far as the statute of 1923 is concerned it simply gave the right to " *affiliate itself with another body or association *  *  * as its parent body.*" This was not done and we are of the opinion that to accomplish a severance of its relations to the National Order, the Grand Lodge must strictly comply with the terms and conditions prescribed by the act on which it relies, which it has not done.

It is true that subdivision 9 of section 1 of the act further uses these words: " *and to discontinue such affiliation and sever connection with such body.*"

What is meant by the words " *such affiliation* " and " *such body?* " These clearly refer to such new parent body with whom the Grand Lodge may by action join on severance of its relations to the Supreme Lodge of the Sons of Italy in America.

In other words, the act of 1923 purports to authorize affiliation with some new or different parent association, and also a secession later from such new or different parent body by appropriate action. These words confer no power or authority to sever relations with the plaintiff the Supreme Lodge of the Sons of Italy except on affiliation with some other body or association having objects and

purposes consistent with its own.   This was not done, and assuming for the argument that by the act of 1923 such severance might be had, nevertheless we are of the opinion it was not legally accomplished by the action of the Star Casino meeting for the reasons stated.

There is still another good and sufficient reason why the action of secession from the parent body taken at the Star Casino meeting was illegal and ineffective to accomplish the purpose.   The regulations duly adopted for the government of the defendant Grand Lodge provide for annual conventions or assemblies of the State Lodge in the month of August each year to be composed of delegates sent to it by the subordinate or District Lodges of the State.   This regulation further provides that such conventions shall be held " *in such City as may be selected at the immediate preceding Grand Convention.*"   A grand convention of the defendant Grand Lodge was held in August, 1924, at the city of Yonkers, N. Y.   At that convention the city of Schenectady was by resolution duly designated as the place for holding the convention in August, 1925.   Delegates to this 1925 convention were chosen by the District Lodges.   Notices of the time and place of holding the Schenectady convention were sent to such delegates in accordance with the regulations of the defendant.   However, officials of the grand council of the defendant prior to the convening of the convention at Schenectady assumed to change the place of holding the convention for 1925 from the city of Schenectady to the Star Casino in the city of New York.   Notices of such change were mailed the elected delegates, and they were requested to attend the convention in New York city.

The right and authority of the officers of the grand council to change the place of convention was challenged, and as a result certain of the delegates gathered at Schenectady, and others assembled at New York.   It seems both conventions organized and assumed to transact business.   We are in the present discussion concerned as to the legality of the Star Casino or New York convention, and of the proceedings there taken, among such acts being the attempted secession from the parent order.   We should here note the larger number of delegates attended the New York meeting.   The plaintiffs contend the New York convention and all its proceedings must be deemed a nullity for lack of authority to change the place of meeting from Schenectady to New York.   The argument is that the Yonkers convention of 1924 alone had the power and authority to name the place of holding the convention of 1925, and having designated Schenectady no where under the constitution, regulations

34

or by-laws had the grand council or its members any authority to change the place of meeting.

The referee has diligently searched the regulations and by-laws and has been unable to find any provision conferring any such authority in the council or its members or officers.

Defendant's counsel has directed the referee's attention to no such provision. They do, however, contend that the general supervisory powers given the council gives such authority.

The regulations adopted by the grand council provide the grand council " May assemble in extraordinary meetings in very important cases in which the grand council has no authority or is unable to make provision for."

This provision by its very terms relates solely to " extraordinary " meetings and not to the annual or stated conventions expressly provided for in the regulations. The annual conventions are not and cannot be in any sense termed extraordinary meetings. The choice of the city in which to hold the annual convention is specifically given to the preceding convention, and this designated Schenectady for that of 1925. Undoubtedly when once assembled in the place so designated the convention itself might by proper resolution adjourn to some other place, but the authority for such an adjournment would rest in the action of the convention itself. No such adjournment by the convention itself was had or attempted. It did not rest with the council or its officers.

The question is, therefore, sharply presented what legal effect or validity the proceedings had at the Star Casino meeting in New York city has or had as constituting corporate action although attended by more than a majority of the delegates chosen.

Morawetz in his work on Private Corporations (Vol. 1 [2d ed.], § 487) states the law to be: " The acts of a majority at a corporate meeting are not binding upon the company, unless the proceedings are conducted regularly and in accordance with general usage, or in the manner prescribed by the charter and by-laws of the company." (Citing *State* v. *Pettineli*, 10 Nev. 141; *Johnston* v. *Jones*, 23 N. J. Eq. 216; *People* v. *Albany, etc., R. R. Co.*, 55 Barb. 344; *Commonwealth* v. *Woelper*, 3 S. & R. 29. See, also, Thompson Commentaries on the Law of Corporations, § 697, limiting the right of directors of a corporation to fix the place of election to cases " where the charter does not prescribe the place where the annual elections are to be held.")

The same general rule is laid down in 10 Cyc. 321. At page 323 of that work it is also said: " The members of a corporation, public or private, can do no corporate act of a constituent character, such as must be done at a general meeting of all the members or of a

quorum of them, unless the meeting is duly assembled, in conformity with the law of its organization. * * * The reason is that each member has the right of consultation with the others, and that the minority have the right to be heard."

The referee is aware of no decisions of the courts where these general rules have been departed from. If the referee is correct in his view of the matter, that the New York meeting had no right or authority to assemble and transact business binding on the Grand Lodge or State organization of the Sons of Italy in America, then it follows as matter of course that the resolution of a secession passed at that meeting was in legal effect a nullity, and inoperative for any purpose. No secession was accomplished and the Grand Lodge defendant must still be deemed affiliated and connected with and a component part of the parent order of the Sons of Italy in America.

It also follows that the officers or members of the grand council chosen at that meeting were never duly elected and have no right to hold office as such by virtue of such election. This the referee believes to be the correct view of the matter.

There still remains a third reason strenuously urged by the plaintiffs' counsel why secession from the parent or Supreme Order should not prevail, and that is that such a secession, if carried out, would impair and destroy the contractual relations existing between the parent order and its members, the District Lodges and the Grand Lodge, and such an interference with the contract right of members and subordinate lodges it is contended impairs constitutional rights protected and guaranteed by the Constitution of the United States.

Nowhere is the right of secession recognized or given by the constitution of the Supreme Order, or in the regulations or by-laws of the Grand Lodge. On the contrary, they prescribe loyalty to the Supreme Order. On admission to the Order the individual member was required to swear " to obey the general laws of the Order, the decrees of the Supreme Venerable, and of the Supreme Lodge, and the decrees of the Supreme Venerable of the State."

Grand officers made the following promise on taking office:

" I ........ .......... elected Grand Officer of the State of .......... placed under the jurisdiction of the Loggia Supreme Ordine d. Figli. it. Itatia in America on my honor promise to have observed the general laws emanating from said Order, and I swear and promise to sustain the authority of the Supreme Executive Council, and that of this State Lodge of which I am a member and to inspire every personal act of mine essential toward the welfare and advantage of the entire order and in the interest of the Italian name."

Each member of a District Lodge became on admission a member of the parent order, as well as a member of the District and Grand Lodge.

The practical effect of a severance of affiliation to the parent Order would be to sever the relation of the District Lodges, and their members from the General Order. It deprives them of representation in the General Order through the District Lodges, and the Grand Lodge as contemplated by the constitution and by-laws of the Order. It puts the control and management of the property and affairs of the Grand Lodge into the hands of officials and a board freed from the general supervision and of the Supreme Lodge. In short, it would establish a wholly independent and different order from that which members within the State joined, and to which they promised allegiance. It cannot, we think, be claimed but that such a disaffiliation would operate to destroy the contractual relations of members with the General Order and the benefits derived therefrom. The broad question is, therefore, presented, whether the act of 1923 violates the constitutional restraints imposed against the impairment of contractual rights.

It is true the language of the act of 1923 is simply permissive and not mandatory. It simply purports to authorize the Grand Lodge to do what has been attempted. But the defendant Grand Lodge in doing what it did stands on the authority purporting to be conferred by the statute, and it must stand or fall on the legality of such authority.

Had the Legislature undertaken by statute to directly disaffiliate the State order from the parent Order, we are of the opinion such legislative action would be pronounced illegal and unlawful.

May it do or authorize the same result under the guise of an amendment or addition to the corporate powers of an association like that of the defendant, incorporated under a general law authorizing the formation of such associations? May the Legislature thus do by indirection what it could not do directly without impairing contract obligations? We are not unmindful that article VIII, section 1, of the State Constitution provides for the formation of corporations under general laws, and further provides that "all general laws and special acts passed pursuant to this section may be altered from time to time and repealed," but it is held that such power must still be exercised in subjection to the provisions of the Federal Constitution. (*People* v. *O'Brien,* 111 N. Y. 1, 37–50; *Matter of Long Sault Development Co.,* 212 id. 1, 8.)

In the *O'Brien* case it was held the constitutional or statutory provisions for the repeal of statutes, providing for the creation of

corporations, or the annulment of charters of corporations, do not confer power to take away or destroy property or annul contracts, and an express reservation in such a statute of power to take away or destroy property lawfully acquired under authority conferred by charter, and any legislation which authorizes such a result to.be accomplished indirectly is unconstitutional and void.

The principle enunciated we think applies to any contractual rights acquired in a membership corporation.

We need only refer generally to the doctrine laid down in the famous *Dartmouth College* case* by the Supreme Court of the United States holding a State Legislature could not take away charter rights conferred by a charter previously granted the institution.

Consequently the referee is of the opinion that the legislative act of 1923 giving the defendant the Grand Lodge of the State the right to sever its relations to the parent Order was unconstitutional to that extent, and the defendant cannot avail itself of that authority to justify the action of the Star Casino meeting for seceding from the National Order to which it was subordinate and owed allegiance.

We understand it to be the law that any attempted secession by a subordinate body or order, unless through the unanimous action of all its members, is illegal and uneffective as to loyal members and the secessionists lose all right in the property of the subordinate lodge.    (*Sabourin* v. *Lippe*, 195 Mass. 470; *Koerner Lodge, No. 6, K. of P.* v. *Grand Lodge, K. of P.*, 146 Ind. 639; 45 N. E. 1103; *National Circle* v. *Hines*, 88 Conn. 676; *Polish Falcons' Gymnastic & Literary Assn.* v. *Kubiak*, 238 Penn. St. 464; 86 Atl. 296; *Montagua* v. *Cesareo*, 183 App. Div. 924.)

These cases are cited to show how zealous the courts are in protecting the rights and standing of members of fraternal orders.

To sum up the result of the foregoing considerations we reach the conclusion that the defendant, the Grand Lodge of the State, had no right to secede from the parent Order against the protest of individual members or constituent District Lodges.

Assuming such a right existed, the statute was not in terms complied with, and the New York or Star Casino meeting was not so constituted that it could legally take any corporate action, and as a result the Grand Lodge of the State must be deemed still to be a subordinate lodge of the General or National Order and subject to the constitution and legal by-laws of such Supreme Lodge.

---

*Dartmouth College* v. *Woodward* (4 Wheat. 518).

As illustrating the views of the referee we might cite the famous case of *Texas* v. *White* (7 Wall. 700), decided by the United States Supreme Court. We cite it because the relation of a State to the Union or Federal government is somewhat analogous to the relation the defendant Grand Lodge sustains to the parent Order or Supreme Lodge. During the Civil War Texas seceded from the Union and set up an independent State government, but after peace was restored, sought to recover certain bonds issued by the United States government to the State, but which the rebel State authorities had undertaken to dispose of. The complainant in that case took the position that Texas notwithstanding its attempted secession still remained in law an integral part of the Union. Chief Justice Chase writing for the court held the Union never was in law dissolved and the bonds in question never legally disposed of and in the course of his opinion said: " When, therefore, Texas became one of the United States, she entered into an indissoluable relation. All the obligations of perpetual union, and all the guaranties of republican government in the Union, attached at once to the State. The act which consummated her admission into the Union was something more than a compact; it was the incorporation of a new member into the political body. And it was final. The union between Texas and the other States was as complete, as perpetual, and as indissoluble as the union between the original States. There was no place for reconsideration, or revocation, except through revolution, or through consent of the States."

The plaintiffs, as the referee understands, contend that the members of the grand council chosen and elected at the annual convention held at Schenectady in August, 1925, are the duly elected members of said grand council, and entitled to administer the affairs of the State Lodge and the defendants should turn over to them the property of the State Lodge for such administration.

There are, however, in our opinion unsurmountable objections to regarding the persons elected at Schenectady duly chosen members of the grand council. The regulations governing the Grand Lodge provide that to constitute a quorum for the transaction of business at a grand convention at least one-third of the number entitled to attend must be present. Such a number was not present at the Schenectady convention. It is claimed between 80 and 90 were present at Schenectady. Some 280 attended the New York convention, or there were some 360 delegates in all. Consequently if we should hold 90 present at Schenectady that number was not one-third of the delegates, and no quorum was present authorized to legally transact business. Therefore, we must hold the members of the grand council claimed to have

been chosen at the Schenectady convention were never legally elected.

We, therefore, have this anomalous situation, that neither at the New York convention nor at the Schenectady convention were members of the grand council legally chosen.

We assume, however, that in the absence of a legal election of successors the old members of the council are entitled to act until their successors have been properly chosen.

The plaintiffs, however, are not without their remedy.    In our judgment a convention of the defendant Grand Lodge should be called for the express purpose of electing members of the grand council to manage the affairs of such Lodge in accordance with the constitution of the parent Order and the regulations of the Grand Lodge, and when so elected the Grand Lodge and its acting council and officers should transfer and turn over to such newly elected officers and council the property and effects and account therefor.    It may possibly be urged that the referee has no power or authority to order a new election, and such a decree or judgment is beyond the relief asked in the prayer of the plaintiffs' complaint. We think the Supreme Lodge, the District Lodge and the individual plaintiffs have an equitable interest in determining the true status of the State Grand Lodge and of its officers and of their relation not only to the parent Order but to the District Lodges, individual members, and whether the State or Grand Lodge had the right to secede from the parent Order, and have a standing to prosecute this action not only for themselves, but in behalf of others similarly situated.    If such rights exist then this court as a court of equity has a right to maintain jurisdiction of the controversy for the purpose of administering complete relief, and doing entire justice with respect to the subject-matter.    (*Russell Hardware & Implement Mfg. Co.* v. *Utica Drop Forge & Tool Company,* 195 N. Y. 54; 16 Cyc. 106.)

As a conclusion of the whole matter the referee finds the plaintiffs are entitled to a judgment or decree:

That the defendant State or Grand Lodge was and is a component part of the Supreme Lodge of the Sons of Italy in America. That it has and had no right or authority to secede from said parent Order.    That the action taken at the Star Casino or New York meeting or convention was without authority of law or legal right, and notwithstanding such action said defendant continued to be and still is connected with and a component part of said order, and subject to the constitution and by-laws of said parent Order and to the orderly discipline thereof.

That the old or acting council or officers of said Grand Lodge

with reasonable dispatch call an extraordinary meeting or convention of said Grand Lodge for the purpose of electing delegates or members of the council of said Grand Lodge to manage and control its affairs pursuant to the regulations of said Grand Lodge.

That on the election of said members of said council the present acting officers or council of said Grand Lodge turn over and transfer to such newly elected council and officers all the property and effects of said Grand Lodge to be by them administered according to the constitution of the parent Order and the regulations of the Grand Lodge.

This includes the so-called mortuary fund.

As to this fund the referee is of the opinion it constitutes a trust fund held for the benefit of such of the Order as have seen fit to join it for the purpose of enjoying the benefits thereof. This trust fund 's administered by a board named by the council, and should in the future be handled and administered by a board chosen by the newly elected council. It is an incident and a vital incident connected with the whole controversy involved in this litigation. We believe a decree made along the lines indicated will fully protect all the interests concerned.

Let a decision be drawn accordingly, with costs of this action to the plaintiffs.

So ordered.