Sons of Italy Grand Lodge, Inc., and Others, Plaintiffs, *v.* The Supreme Lodge of the Sons of Italy and Others, Defendants.

Supreme Court, New York County, May 27, 1930.

*Philip Bongiorno*, for the plaintiffs.

*Hardin, Hess, Eder & Freschi* [*Harold B. Elgar* and *Frank Rashap* of counsel], for the defendants.

FRANKENTHALER, J. This is an application by the plaintiff, a membership corporation, for an injunction restraining the corporate defendant from carrying into effect a certain suspension and expulsion order. While there are several parties plaintiff and defendant, the dispute is essentially between the corporate plaintiff and the corporate defendant. The present litigation is an outgrowth of a controversy that has occupied the attention of the courts since 1925. In that year the plaintiff, as a State organization of the defendant, a National fraternal order, attempted to secede from its jurisdiction, basing the right to do so upon a provision in its (plaintiff's) articles of incorporation. The defendant, as plaintiff, commenced an action in Oneida county, and, after a lengthy trial before an official referee, the right of the present plaintiff, hereinafter referred to as Grand Lodge, to secede from the jurisdiction of the Supreme Lodge, was denied. The learned referee held that a conventional or contractual relation bound the Grand Lodge to the National order, and that the legislative provision (Laws of 1923, chap. 217, *infra*) authorizing a secession was unconstitutional. (*Di Silvestro* v. *Sons of Italy Grand Lodge*, 129 Misc. 521.) Upon appeal to the Appellate Division of the Fourth Department, the judgment entered upon the decision of the referee was modified in certain respects. While the attempted secession was discountenanced, the court refused to hold that the provision which authorized the severance of relations was unconstitutional, but held that the right of withdrawal by the Grand Lodge was subject and subordinate to the laws of the National order in relation to withdrawals, and could only be exercised when not in conflict with contractual relations with the parent body. (*Di Silvestro* v. *Sons of Italy Grand Lodge*, 228 App. Div. 14.)

Thereafter, upon the failure of the plaintiff to accede to the defendant's demand that it restore the ritual to its proper form and

pay back assessments of $2,500, the defendant, through its supreme executive council, issued decrees, first suspending and later expelling the plaintiff from the order. The present motion seeks to restrain the enforcement of these decrees, while a cross-motion asks that the plaintiff be enjoined from interfering with their execution. Notwithstanding the fact that the courts have had occasion to define at length the relations between the State bodies, such as the present plaintiff, and the National order, and also the relation of the individual constituent members to the State and National bodies respectively, the decisions were directed to defining (or limiting) the right of a State body to secede. Here, however, a different question is involved, namely, the right of the National body to expel the State organization, and the effect of such an expulsion order upon the property rights of the Grand Lodge, its subordinate district lodges, and the members of such lodges. The decree of the Supreme Lodge, the name by which defendant is known, is sweeping in character. It expels not only the members of the Grand Lodge, but the district lodges as well, together with their individual members. All the property of these various bodies is to be sequestered. The immediate effect of this mandate is to create serious confusion, to the great detriment of the individual members for whose benefit, after all, the order exists. They have no means of determining whether their assessments and dues shall be paid to their former lodges or to the Supreme Lodge. The uncertainty as to the legality of the suspension and expulsion is fraught with grave consequences to the members. They may lose not only the benefits of fraternal relations with their fellow-members, but also the financial benefits accruing from membership. The defendant contends that if the supreme executive council exceeded its jurisdiction in issuing the decree in question, the plaintiff should seek redress within the order. There appears, however, to be no provision for suspending the operation of the decree while the plaintiff pursues the course suggested. The courts must, therefore, be resorted to in order to prevent the irreparable injury which might otherwise result from the taking away of the plaintiff's property by virtue of a mandate later found to be wrongful. In any event, the determination of the scope and propriety of the decree should await the result of a trial. But there is another very important reason why the sequestration of the property of the Grand Lodge should be enjoined *pendente lite*. While membership in the National body carries with it social and fraternal privileges, membership in the State body affords the very important benefit of participation in a mortuary fund which furnishes death benefits to the members. The provision for death benefits is entirely optional with the various sub-

ordinate organizations and is not an advantage which automatically accompanies membership in the National order. In the administration of the mortuary fund each State organization acts as an autonomous body, and no contribution to the fund is made by the Supreme Lodge. The establishment and the conduct of such a fund on the part of the plaintiff corporation were expressly authorized by chapter 217 of the Laws of 1923, which was entitled "An act to validate and continue the membership corporation known as Sons of Italy Grand Lodge, and to define its powers and purposes." Among the purposes authorized were the following: " 7. To establish, maintain, collect, raise by assessment on members, invest and disburse a mortuary fund or funds and to pay out of the same upon the death of a member as a death benefit such sum as may from time to time be determined; 8. To raise such sums as may be necessary for such mortuary fund or for other purposes of the corporation by collecting the same as dues or assessing the same upon its members; * * *" The amount of the fund is very substantial and the plaintiffs should not be deprived of it at this time in the absence of the clearest right to it on the part of the Supreme Lodge. As a matter of fact, the claim of the Supreme Lodge to even temporary custody of such fund after an order of expulsion is of doubtful merit. The following observations of Judge Brown in *Austin* v. *Searing* (16 N. Y. 112, 124) are illuminating: " The by laws and regulations of these voluntary associations may all be very well in their place and sphere, and may command generally the obedience and submission of those upon whom they are designed to act; they cannot, however, have the force of law, nor impair or affect the rights of property against the will of its real owners. So long as the members of these bodies yield their assent or concurrence it is all very well; the law interposes no obstacle or objection. But when orders and decrees of the character of those referred to are resisted, and the owners of property refuse to be deprived of it, then it will be found that property has rights, and the courts of justice have duties, of which the plaintiff in this action seems to have an indifferent conception. The courts of justice cannot be called upon to aid in enforcing the decrees of these self-created judicatories. The confiscation and forfeiture of property is an act of sovereign power; and the aid of this or any other court will not be rendered to enforce such proceedings, or to recognize legal or supposed legal rights founded upon them."

As to the scope of the injunction, plaintiff should be free to proceed with its organization and the custody of its property and the mortuary fund, as in the past five years, and the defendant should be enjoined from interfering with any of plaintiff's lodges or the mem-

bers thereof pending the outcome of the trial. On the other hand, the Supreme Lodge should be at liberty to organize new lodges within the State, provided it does not invade the present membership of the plaintiff, and such lodges as well as those which it has already organized within this jurisdiction and which are unaffiliated with plaintiff should be permitted to function without interference from the plaintiff. It is true that the Supreme Lodge is ordinarily required to obtain the recommendation of the Grand Lodge as a condition precedent to the granting of charters within the latter's territory. But to restrain the formation of new lodges by the Supreme Lodge would work unnecessary hardship upon it and this will, therefore, not be done. The motion and cross-motion will be granted to the extent indicated. Settle order incorporating the disposition of the two motions in one order.