Brown, Mason, &c., v. Moore, Hickman, &c.

CASE 84—EQUITY—OCTOBER 14, 1882.

80   443
113   30

# Brown, Mason, &c., v. Monroe, Hickman, &c.

APPEAL FROM LINCOLN CIRCUIT COURT.

In 1858 Snead and wife conveyed a lot of ground to trustees "for the use and benefit of the colored members of the Methodist Episcopal Church, South," &c. In 1865 appellants withdrew from said church and "set up for themselves" as part of the "African Methodist. Episcopal Church of the United States of America."

1. Appellants having seceded from the former church, have no right to the use of the property for any time whatever as against the members of the M. E. Church, South.

2. The resolution of the general conference of the M. E. Church, South, *advising* that their trustees shall permit persons who join the African M. E. Church of the U. S. to use their houses of worship, passes no title and gives no rights to the latter.

3. Property dedicated thus should, in good faith, be held for the use of the M. E. Church, South.

McKEE & FINNELL FOR APPELLANTS.

1. This is substantially the same case as that of Newman v. Proctor, in 10th Bush. It is in regard to the identical property. The judgment in that case, as we think, has the authority of *res adjudicata*, and if it be so, is decisive of this case. (2 Burr., 1009; Robinson's Practice, 3; *Ib.*, p. 137, chap. 2, sec. 2, vol. 7; 4 Dall., 121.)

2. If appellees have organized themselves, or have been organized, into a church, and that organization was separate and distinct from the M.E. Church, South, existing at the time of the deed, they have no interest in this property. And such is the fact.

3. We refer to the proceedings of the general conference of the M. E. Church at New Orleans in 1866, in which it resolved that whenever entire churches and congregations shall have voluntarily left them and united with the African M. E. Church, the trustees are advised to allow them the use of the house of worship heretofore solely occupied by them as before they left the M. E. Church, South.

DURHAM & JACOBS FOR APPELLEE.

1. The suit of Newman v. Proctor, 10 Bush, 222, cannot now cut any figure in this case. The parties are different, although the same property is in litigation.

2. The record shows conclusively that when the deed was made there was. a society of colored persons belonging to the M. E. Church, South.

3. It was not in the power of the trustees or all of the old members to permit the property to be used for a purpose other than that specified in the deed. (Lewis v. Watson, 4 Bush, 231.)

4. The resolutions of the general conference only extended to the use of the property, and not the right to it. (Minutes Gen. Conf. M. E. Church, South, for 1866, pp. 65, 66; *Ib.*, 1870, pp. 182, 183.)

CHIEF JUSTICE HARGIS DELIVERED THE OPINION OF THE COURT.

After a second hearing, and careful review of all the facts and legal questions involved in this litigation, we have arrived at a conclusion, as we think, in harmony with the deed under which the church property in question is held, and within the policy and spirit of the action of the Methodist Episcopal Church, South, as shown by the rules and discipline and conferences of that body since the date of the deed.

In 1858 Snead and wife conveyed the lot on which the church is erected to trustees whose names are mentioned in the instrument, to be held by them "in trust for the use and benefit of the colored members of the Methodist Episcopal Church, South, according to the rules and discipline which, from time to time, may be agreed upon and adopted by the ministers and preachers of the said church in their general conference."

The deed further provides for the uninterrupted use of the church by the ministers and preachers of the Methodist Episcopal Church, South, to preach and expound God's holy word therein.

The building was erected on the lot before the general emancipation of slaves.

This controversy, not altogether full of the meek spirit which teaches "to agree with thine adversary quickly," grows out of an effort of two distinct societies of colored Methodists to appropriate to the exclusive use of one of them the lot and house referred to above.

The appellants, in the year 1865, withdrew from the Methodist Episcopal Church, South, and, in the language of one of their witnesses, "set up for themselves" as an integral part of the church organization known as the African Methodist Episcopal Church of the United States of America.

In the following year the Methodist Episcopal Church, South, in conference at New Orleans, passed a resolution "that whenever entire churches and congregations shall have voluntarily left us and united with the African M. E. Church, the trustees be, and they are hereby, *advised* to *allow* them the use of the house of worship heretofore solely occupied by them as before they left our church."

This action of the conference was wholly accommodative, and, in legal effect, did not operate to invest the African M. E. Church with the legal or equitable title to any of the property named in the resolution.

Under it, however, the appellants, and those whom they represent, took possession of the house of worship in question, and without any apparent discord, used it until a part of the colored people were excluded, as is contended by appellees, for their adherence to the M. E. Church, South, from worshiping there. Other causes are assigned by the appellants for the exclusion. But whatever may have been the cause of their exclusion, or the merits or demerits of the claims of the parties before, and which were involved in the decision of Newman v. Proctor, 19 Bush, the record before us presents the question whether the colored members of the M. E. Church, South, or the members of the African M. E. Church of America, who have no ecclesiastical or church connection with the M. E. Church, South, are within the description of the beneficiaries under the deed named, and

therefore entitled to the use of the house of worship and lot
on which it is erected.

It is important to note that the trust imposed by Snead
and wife in their deed requires that the property should be
held for "*the use and benefit of the colored members of the
Methodist Episcopal Church, South.*"

That use and benefit were to be enjoyed according to the
rules and discipline prescribed by the general conference of
said church.

At a general conference held in the city of Memphis in
the year 1870, the proceedings of that body show that
"report No. 1 of the committee on the religious interests
of the *colored people* was taken up, acted on item by item,
and *adopted,*" and that that report embraced, as the fifth
item of the first resolution, this language:

"That all trustees now holding church property for the
use of *our* colored membership, be instructed to make titles
to said property to the properly constituted trustees of the
Colored M. E. Church, South, according to the discipline
of said church when organized;" which is immediately suc-
ceeded by the following preamble and resolution:

"Whereas, applications have been made by certain par-
ties for the transfer of the title to property belonging to the
M. E. Church, South, to congregations who have withdrawn
from our communion; and whereas, we regard the property
conveyed to our trustees for the use of the colored congre-
gations of our church a *sacred trust* to be held for *them*,
therefore,

"*Resolved* 6. That it is the settled conviction of this
body that the M. E. Church, South, has neither the legal
nor moral right to transfer any property thus held to those
who have withdrawn from our church."

These proceedings show an unalterable purpose upon the part of the M. E. Church, South, not to acquiesce in the use of such property by denominations or members of churches not in communion with them, or recognize their title thereto.

The resolution of 1866 simply *advised* the trustees of such property to allow the members of the African M. E. Church to use it when the *entire* colored membership voluntarily left the M. E. Church, South.

This was generous and proper in such a state of case, but by no means *legally* incumbent upon that church.

The conference evidently intended to allow the *use*, but to retain the title to such property, when the M. E. Church, South, had no *colored* members to enjoy the use themselves.

The reports, however, of the statistics of the M. E. Church, South, show a colored membership in some localities of one hundred, and the conferences of that church are bound to be just before they are generous, and preserve the property dedicated to the uses of its own colored members, and see that its trustees apply it in the manner intended by the grantors.

Construing a deed, in every material respect similar to that of Snead and wife, this court, in the case of Lewis, &c., v. Watson, &c., 4th Bush, 229–234, held that the colored members who seceded or withdrew from the M. E. Church, South, had no right to the property as against a minority of colored members who adhered to that church. That case goes so far as to hold that if all the colored members had withdrawn they would have left the property dedicated to the use and control of the M. E. Church, South.

That decision is conclusive of this case, and settles the question that the M. E. Church, South, is entitled to the

control, and *its* colored members to the use, of such property so conveyed.

The appellants insist, however, that the appellees are not. of the class of persons embraced by the deed, and that the issues in this case are *res adjudicata*.

The appellees were selected from a society of colored members numbering forty-eight of the M. E. Church,. South, at Danville, Ky., to prosecute this action, it being impracticable for the whole of the society to be parties, and the court allowed the appellees to prosecute the suit. for the benefit of all their brethren.

These forty-eight persons were organized into a separate society by the minister in charge at Danville Station, still retaining their communion and membership in the M. E. Church, South, and recognizing no other.

They have proceeded in orderly work, holding meetings. once or twice a month, and sometimes oftener when a preacher could be had, and conducting prayer meetings, until, as the testimony shows, they are in good spiritual condition. And why these colored people, so acting and holding an honorable membership in the church of their choice, made by many of them when in slavery, shall not be considered within the description as beneficiaries under the deed of Snead and wife, we are unable to state or imagine.

They cannot be deprived of the attitude they *now* occupy by digging up their personal faults in the past, or spreading: upon the record their inconsistencies in church relationship.

Whether slaves or sinners in the past, consistent or inconsistent church adherents, entitled or not to have an acquittal from appellants' charges, written by the finger of their Saviour in the sand, all that the appellees had to establish

for themselves and constituents is, that they are colored members of the M. E. Church, South, at Danville, and had been excluded by the appellants, who are not members of that church, from the use and benefit of the property embraced by the deed of Snead and wife.

This the appellees have done with legal certainty, and they are therefore entitled to the relief granted by the judgment of the circuit court.

While the subject-matter in this case is the same that was in controversy in the suit of Newman v. Proctor, still the parties are essentially different, and possess rights not involved in the case last mentioned.

Wherefore, the judgment is affirmed.