CASE 5—ACTION BETWEEN TWO FACTIONS OF A SOCIETY OVER THE PROPERTY OF THE SOCIETY.—MARCH 12, 1902.

# Union Benevolent Society No. 8 v. Martin, &c.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

BENEFIT SOCIETIES—SCHISM—RIGHT TO PROPERTY OF SOCIETY—VALIDITY OF REGULATIONS—RIGHT OF MEMBER TO BE REINSTATED.

Held:   1. When a schism has occurred in a benevolent association, which has united with and assented to the control and supervision of a general organization, and thereafter acquired property by the investment of dues collected from its members while harmony obtained, that faction which has adhered to the laws, usages, and customs of the general organization, though it be a minority of the entire membership, constitute the true association, and is alone entitled to the use and enjoyment of the property, provided such minority embraces the minimum number necessary to continue the existence of the local organization.

2. The society can not change the objects of the association, or add entirely different and independent objects to those embraced in the original articles, but it may bind members by mere internal regulations, such as those having for their purpose the more definite identification of members in traveling, and the acquirement by members of greater proficiency in the knowledge of the teachings of the institution.

3. It seems that the failure of members to conform to by-laws of the order does not work a dissolution of membership, in the absence of some by-law expressly so providing, and that members, upon compliance with by-laws to which they have theretofore objected, are entitled to be reinstated to membership and enjoyment with other members of the benefits and profits of the society.

FORMAN & FORMAN AND B. E. SMITH, FOR APPELLANT.

(No brief.)

GEORGE DENNY, FOR APPELLEE.

After a careful reading of the charter the Union Benevolent Society, vol. 1, page 464, Session Acts of 1878 of the Kentucky Legislature, we find nowhere, the authority given by which the grand lodge could turn itself into a secret organization. Section 2 of the charter provides, "That the purpose and object of the society is to provide and sustain at some point in this State, a home for the deserving orphans of deceased parents of color, to secure them proper training and education, and to provide a suitable and proper home for the indigent aged and infirm of the colored race." It is not anywhere shown that such home has been provided for either the orphans or the infirm.

The appellees contend that the lower court was right in refusing to allow the witness, W. C. Martin, to show that after the separation between the society and the appellees, that he, Martin, had been elected president of the grand lodge of said society, and that the court was right in refusing to allow Martin to testify that he and his friends were recognized by the grand lodge as constituting the Union Benevolent Society, No. 8 of Athens, Ky., The grand lodge is no party to this suit.

It is true the grand lodge of the State had the power, under the charter, to make and adopt by-laws of rules and regulations for its government, as well as for the government of the subordinate lodge, but nowhere does the charter provide for a secret organization, and before the charter could be changed so as to turn it into a secret organization, it would be necessary to have the consent of all the members of the association, or

at least of a majority of them. Am. & Eng. Ency. of Law, vol. 2, page 173 (1st ed.); Livingston v. Johnson, Chancery Reports, 573.

The appellees believing that the by-laws and regulations requiring secret work upon the part of the subordinate lodges, was invalid unless a majority of the vote of the lodge was willing to accept it, and.that only eight out of seventy-five were willing to accept the secret work, they therefore, determined that they had the right to refuse to accept the secret work and grips, and that determination did not conflict with their agreement to respect and obey the Constitution and by-laws established for the government, of their association.

If the by-laws requiring secret work were invalid, they had no binding force upon appellees, and the court below taking that view of the question very properly gave instructions to the jury to find for the defendants.

OPINION OF THE COURT BY JUDGE O'REAR—REVERSING.

This controversy between discordant factions of appellant society involves the title to the funds, paraphernalia, and other personal property belonging to the lodge. In 1878 by an act of the Legislature, there was incorporated the State Union Benevolent Society (1 Acts 1877-78, p. 464), a charitable organization incorporated to promote fraternalism and benevolence among its members. Section 3 of the incorporating act is: "The membership of said corporation shall consist of active and life members. The condition of such membership and the organization of the corporation and subordinate societies throughout this State shall be determined by the board of directors and placed in by-laws adopted by them." Section 8 (page 465), is: "To enable said corporation the better to carry out and fulfill the object and purpose of this act, it is authorized to organize and establish subordinate and local societies inferior to the one created by this charter, and said societies may be organized upon such terms and conditions and with such pow-ers consistent with this charter as may be deemed expedi-

ent, but before any such society shall be organized it shall submit to the board of directors herein. a copy of their by-laws, rules and regulations for the approval of said board, and this corporation shall have power to change, alter, amend or annul any and all by-laws of any inferior society and substitute its own therefor. All by-laws, rules and regulations shall be consistent with the Constitution and by-laws of the United States and the State of Kentucky." Previous to the granting of the charter privileges to the State organization it appears that appellant society maintained an independent organization, but after the organization of the State lodge, in 1878, appellant applied to it, and was received and organized as a subordinate lodge. It subscribed to the following condition in its charter: "Believing that we may extend our information and increase our usefulness among our people, we, the members and officers of said society, do faithfully and lawfully attach ourselves to the State organization, and bind ourselves to respect and obey the Constitution and by-laws established for the government of the same." It is further provided in the charter that appellant "has been duly enrolled as a member of the State Union Benevolent Society under the Constitution and by-laws thereof." Subsequently the State lodge adopted amendments to its Constitution and by-laws, not changing the purpose of the organization, but regulating its internal government. Among these it adopted a ritual or "hand-book." The section on this subject was as follows: "The grand council (as hereinafter provided) shall prepare a hand-book for the government of all departments of the order, in order to insure uniformity in the workings, and the said council shall have power to alter or amend the same as circumstances may require." It appears that this handbook provided for the installation of certain secret work, in-

cluding grips, pass words, etc.   When the representative of the grand council or State lodge came to appellant to install the new work, the majority of the members of appellant lodge refused to receive it, and rebelled.   Eight members, however, were faithful to the rulings of the higher authority of the order, and continued to hold allegiance to it. Among the by-laws of the State lodge is the following: "Seven members shall constitute a quorum to do business, and as long as this number remain they shall retain the charter and property."   The eight elected delegates to the State lodge, who were received, one of the number having been elected grand president, which is the highest office of the body in the State.   Representatives from the State lodge, including the acting president, called upon the recalcitrant members of appellant to induce them to conform to the by-laws of the institution, but were rejected.   The rebellious members, being in the majority, took possession of, and have continued since to hold, the property of the lodge. This has continued for some four years.   This suit was to recover it from them.   Upon these facts being shown on the trial, the circuit court directed a verdict for the defendants.

The court is of opinion that this was error.   When a schism has occurred in a religious or benevolent association, which has united with and assented to the control and supervision of a general organization, and acquired property since its union and assent to the government of the general organization, by the investment of dues collected from its members while harmony obtained, the title to the property remains in the name of the association, and that faction which has remained loyal and adhered to the laws, usages, and customs of the general organization constitutes the true association, and is alone entitled to the use and enjoyment of the association's property.   This rule applies whether

the subordinate association be a corporation or simply a voluntary association, and regardless whether the majority or minority of the entire membership constitute the faction adhering to and observing the laws, usages, and customs of the general organization, provided the minority includes the minimum number necessary to' support the local organization.    Gibson y. Armstrong, 7 B. Mon., 481; Roshi's Appeal, 8 Am. Rep., 275; Brown v. Monroe, 80 Ky., 443; Baker v. Ducker, 79 Cal., 365 (21 Pac., 764); Goodman v. Jedediah Lodge, 67 Md., 117. (9 Atl., 13), (13 Atl., 627).   "The majority of an incorporated lodge or secret society, who withdraw from the grand lodge and surrender their charter, will not be allowed to retain the lodge property, where the minority continue the organization under the same name, their own officers being installed by the grand lodge."   Altmann v. Benz, 27 N. J., Eq., 331.

It is argued for appellees that the adoption of the handbook or secret work was in violation of appellees' contract of membership, and therefore without their consent was not obligatory upon them, and, if insisted upon by the State lodge, operated a severance of appellees' connection as a lodge with the parent institution.   "The contract of membership in a mutual association is always made with reference to, and always includes, the Constitution and by-laws, of which every member is bound to take notice, whether they are specially referred to in the contract or not, and whether or not they are in fact known to the member."   Such is the rule stated in 3 Am. & Eng. Ency. Law, (2d Ed.), 1081, and which is well supported by authority.   We hold that the society could do no act which would violate the terms of the contract so consummated.   For example, they could not change the object of the association, or add en-

tirely different and independent objects to those embraced
in the original articles; but mere internal regulations, not
changing the contract in substance, may properly be adopted.
Association v. Wanner, 24 Ill. App., 361. The court is of
opinion that, so far as the record before us discloses, the
handbook in question related merely to the internal work-
ings of the order, to the end, presumably, that its members
might be more definitely identified in traveling abroad in
sister jurisdictions, and that they might become more pro-
ficient in the knowledge of the teachings and precepts of the
institution. There appears nothing repugnant to the orig-
inal scheme as it existed when appellees attached themselves
to the order. Therefore they were compelled to submit to
the by-laws until such time as they could in some regular
mode bring about their repeal. Rebellion was not the proper
method, nor could it divest those members who elected to
remain, in accord with the governing organization, of their
rights and possession and use of the property of the local
society.

We do not decide that the "rebellious members," so called,
are not entitled by conforming to the by-laws in question,
to be reinstated to membership and enjoyment with other
members of the benefits and property of their society. In
the absence of some by-law of the order in force at that time
making such an act a dissolution of membership, it would
seem they would be regarded as members upon compliance
with the by-laws to which they have heretofore objected.

The judgment is reversed, and cause remanded for a new
trial, under proceedings consistent with this opinion.