Carroll G. Walter, J.
Plaintiff Suffridge is treasurer of Retail Clerks International Association, a labor union which consists of local unions chartered by it, the members of which are employees of retail stores. It is hereinafter referred to as *454 BCIA. As such, treasurer he brings this action for an accounting with respect to funds of Retail Wine & Liquor Clerks Union, Local 906A (hereinafter referred to as Local 906A), an injunction against interference with contracts with certain employers of members of Local 906A, a declaration of rights, the appointment of a trustee of an insurance fund, and other incidental relief.
Local 906A is one of the local unions chartered by ROIA, and the action is occasioned by what defendants claim was a lawful secession of said Local from RCIA and the organization of its members into Wine & Liquor Store Employees Union Local 122 under a charter from Distillery, Rectifying & Wine Workers International Union of America. The questions presented are with respect to the legality of the secession and new organization and affiliation and the effect thereof upon the rights of RCIA.
In July, 1948 when the secession took place, there was in existence a collective bargaining agreement made January 1, 1947, between RCIA, acting through Local 906A as its agent, and Metropolitan Package Store Association, Inc., an association of owners of retail liquor stores. That agreement, in addition to specifying wages, hours and other conditions of work of employees in such stores, bound the employers to employ union members only and to pay monthly to designated trustees a sum equal to 3% of the weekly wages of their employees, to be held in trust and used to provide life, accident and health insurance and medical care and hospitalization for the union member employees. Three trustees were provided for, one named by the union, one by the employer association and the third by these two. The union named defendant John M. O’Grady, president and business manager of Local 906A; the employer’s association named Julius Weis stein, and the third was and is defendant Samuel Albert, who is designated as impartial chairman. The agreement by its terms was to continue until December 31,1948, and the term thereof was duly extended in March, 1948 to December 31, 1949.
So far as appears in the evidence, there was no dispute or controversy with respect to either the collective bargaining agreement or the agreement and declaration of trust under which the insurance fund was being administered. All parties apparently were complying with both agreements to the entire satisfaction’of the other parties. But late in June or early in July, 1948 Local 1 of the Distillery, Rectifying & Wine Workers International Union began a campaign the object of which, as I understand it, was to get the clerks in retail wine and liquor stores out of RCIA into Distillery, Rectifying & Wine Workers *455 International Union. In a word, there ensued a jurisdictional dispute between an industrial union, DR & WWIU, and a craft union, ROIA, and conditions were of course unsettled for everyone, employers and employees, union members and union leaders, alike. There undoubtedly was some feeling, too, on the part of at least some officers and members of Local 906A, that ROIA was not as interested, energetic and effective as it should have been in advancing the interests of 906A and its members. With that, however, I have nothing to do. The question for me is, not whether clerks in retail liquor stores should affiliate with a union of retail clerks or a union of workers in the wine and liquor industry, or whether Local 906A should or should not have seceded or did or did not have good reasons for seceding. The question for me is whether it had a legal right to secede and, if so, whether it exercised its right in a legal manner, and what effect the secession has on its property and on the rights of ROIA.
About five or seven days before July 28, 1948 there was mailed to the members of Local 906A a card which announced a special membership meeting at 12 o’clock midnight of July 28, 1948, at Hotel Diplomat, 108 West 43rd Street, New York City. The card stated:
“ A complete report on the recent dispute with local #1 will be made. It is imperative that every member be in attendance. Surprise guests will speak at the meeting. Your employment in a liquor store may be endangered by your absence.
1 ‘ Attend!
“ John M. O’Grady.”
The meeting was attended by 349 members of Local 906A out of a total membership of between 1,100 and 1,200, and after a couple of hours of talk about the ‘ ‘ dispute ’ ’ with Local 1, those 349 members adopted a resolution stating that they terminated their affiliation with Local 906A and withdrew from ROIA, and accepted membership in Local 122, Wine & Liquor Store Employees Union, DR&WWIU — a charter for which, a preamble to the resolution stated, already had been issued. The resolution also purports to assign to Local 122 all rights, privileges and property of Local 906A.
Defendant O’Grady, who presided at the meeting, thereupon declared that Local 906A had withdrawn from ROIA and was no longer in existence, and that a meeting of Local 122 was then in session; and those present thereupon assumed to make those who had been officers of Local 906A officers of Local 122.
All members of Local 906A later signed applications for membership in Local 122, the office of Local 906A was made the *456 office of Local 122, the furniture and equipment in that office was thereafter used by Local 122, and Local 122 took over the bank balance of Local 906A ($203.91) and two automobiles of Local 906A. Dues subsequent to July 29,1948 were also paid to or ultimately received by Local 122.
There also was executed, on August 3, 4 or 5, 1948, an agreement between Local 122 and Metropolitan Package Store Association, Inc., which recites the existence of the collective bargaining agreement of January 1, 1947, between said association and RCIA, the withdrawal of Local 906A, and the formation of Local 122, and then provides that said association and Local 122 reiterate and adopt and agree to be bound by said agreement of January 1,1947, as extended in March, 1948.
Plaintiff Suffridge, as secretary-treasurer of RCIA, thereupon, in the language of section 6(c) of RCIA’s constitution, placed Local 906A under International jurisdiction. That is, he appointed a vice-president of RCIA his deputy to take possession of all books, records, papers and funds of the Local, and authorized him to declare vacant the office of any officer of the Local; and that deputy demanded possession of such books, funds, etc., and suspended O’Grady as a member of RCIA and as an officer of the Local and removed him as trustee of the insurance fund. 0 ’Grady ignored the demand for possession, and asserted, in a bulletin to the members of the Metropolitan Package Store Association and to those who had been members of Local 906A that there was no Local 906A and that its withdrawal and the organization of Local 122 and its affiliation with DR&WWIU were legal and proper; and Albert and Weisstein refused to recognize the claim of Suffridge’s deputy that he had been designated as a trustee of the insurance fund in place of 0’Grady.
As Local 906A was an unincorporated association and there is no applicable statute making it an entity with capacity to take and hold property, the property which it nominally and ostensibly held as its own was in reality the property of its members ■ — unless there be something in the constitution of RCIA which provides to the contrary. (Owens v. Missionary Soc. of M. E. Church, 14 N. Y. 380, 385; Murray v. Miller, 178 N. Y. 316, 321; Mount v. Tuttle, 183 N. Y. 358, 366, 367; Grand Grove, of United Ancient Order of Druids of Cal. v. Garibaldi Grove, No. 71, 130 Cal. 116, 119; 63 C. J., Trade Unions, 693, 694, 697; Grand Lodge of the International Assn. of Machinists v. Reba, 97 Conn. 235, 238.)
The members’ ownership of the property was of course, an ownership as members of such unincorporated association *457 that is a right to the joint use and enjoyment thereof while a member and a right to a distributable share upon dissolution. (Harris ex rel. Carpenters Union No. 2573 v. Backman, 160 Ore. 520; 63 C. J., Trade Unions, 693, 694, 697), and when any individual ceased to be a member, by resignation or expulsion before dissolution, his interest in the property ended; and of course a mere majority of the members could not by their own act transfer the property to another organization. (O’Neill v. Delaney, 158 N. Y. S. 665; Low v. Harris, 90 F. 2d 783; Brownfield v. Simon, 94 Misc. 720, affd. 174 App. Div. 872, affd. 225 N. Y. 643; Local No. 2508 Lumber & Sawmill Workers v. Cairns, 197 Wash. 476; Local No. 2618 of Plywood & Veneer Workers v. Taylor, 197 Wash. 515.)
For that reason, and also because I think the notice of the meeting was fatally defective in that it did not apprise the members that anything so drastic and so far outside the ordinary business of the union as a dissolution of the Local and a change of affiliation was to be presented at the meeting (United Gold & Platinum Mines Co. v. Smith, 44 Misc. 567, 572; Industrial Trust Co. v. Green, 17 R. I. 586), I am of the opinion that the meeting of July 28, 29, 1948, did not accomplish either a dissolution of Local 906A or a valid affiliation of the members thereof with DR&WWIU.
But what the minority of 349 did at the meeting of July 28, 29, 1948, subsequently was acquiesced in, approved, ratified and adopted by all the members of Local 906A. With respect, therefor, to the taking over of the bank account, automobiles, and office furniture and equipment, the situation thus is exactly the same as if the members of Local 906A by unanimous consent had distributed that property among themselves and they had then contributed it to a new association, Local 122. That they certainly had a right to do by unanimous consent, unless their right to do so was in some way limited by the constitution of ROIA, to which they of course had consented and agreed to be bound by.
To avoid possible minsunderstanding, I interject that that statement refers only to funds acquired by an unincorporated association for its general purposes. If such an association should in some way acquire funds for a specific purpose, as, for example, for a sick or death benefit fund or for a building, it could not divert those funds from such purpose even by unanimous consent. (See St. Joseph’s Hosp. v. Bennett, 281 N. Y. 115, 119.) There is here no evidence, however, that any of the funds of Local 906A which were turned over to Local 122 had been acquired by Local 906A for any other than its *458 general purposes, and I thus turn to the constitution of ROIA to see whether the right of the members to distribute the funds among themselves, and then contribute them to a new association which they then elected to form, was thereby limited in some such way as to give ROIA a right to complain of such distribution and contribution.
Section 33 of such constitution provides that all money collected by local unions for initiation fees, reinstatement fees, dues, assessments, etc., shall be the property of the local, except the per capita tax of 60 cents per month on each member (which section 18 requires each local to remit to the International secretary-treasurer on or before the 5th of each month), $1 of the initiation fee and $1 of the reinstatement fee and assessments levied by the general executive board.
There is no evidence that Local 906A at any time prior to July, 1948 ever failed to pay to the International any part of the per capita tax of the initiation or reinstatement fees or assessments which section 33 thus requires to be so paid, and hence the property turned over to Local 122 could not have been property to which International was entitled under that section.
Section 26 of the constitution provides that if a local should withdraw, lapse, dissolve, be suspended or expelled, all property, books, charter, records, papers and funds held by or in the name of or on behalf of said local must be forwarded immediately to the International secretary-treasurer to be held in safekeeping for the association (ROIA) as trustee for the clerks in that locality for a period of one year, or until they shall reorganize, if reorganized during said period; if not reorganized within said period of one year, said property, records, books, charter and funds without further proceedings become the property of the International Association.
Under that provision ROIA clearly was entitled to the possession of the property of Local 906A during the interim, if any, between the dissolution or withdrawal of Local 906A and the organization of Local 122, and unless there were no such interim the property clearly should have been turned over to ROIA. But RCIA’s only right thereto for at least a year after July 29, 1948 was a right to hold the property in trust for the clerks in the locality where Local 906A had existed until such clerks reorganize. Plaintiff’s counsel urges that that means until they reorganize into a local affiliated with ROIA, but section 26 plainly was not intended to be inconsistent with section 33, and I find no warrant for reading into section 26 the limitation for which plaintiff’s counsel contends. I find and decide, there *459 fore, that the clerks in that locality, or, more specifically, the members of Local 906A, did immediately reorganize into Local 122; that that was a reorganization within the meaning of section 26; and that any right of possession that ROIA may have had thus already has terminated.
I conclude, therefore, that ROIA has no interest in the property of Local 906A which was turned over to Local 122, and no right to complain of its having been so turned over, and no right to any relief in this action with respect thereto.
But although ROIA did not become the owner of the property of Local 906A, it certainly had an interest in the continued existence of that Local. It may be assumed, although there is no direct evidence on the point, that the existence and affiliation of Local 906A gave ROIA a certain amount of prestige, power and influence of which it was deprived by the dissolution, and the deprivation of such prestige, power and influence may be of itself sufficient to entitle ROIA to complain of what has been done. But in addition to that, the per capita tax and other sums which the Local was required to pay to ROIA constitutes a direct financial interest in the continued existence and affiliation of the Local which a court certainly will protect against wrongful invasion.
The question is presented, therefore, whether what has been done (the transformation of Local 906A, affiliated with ROIA, into Local 122, affiliated with DR&W Will), was a wrongful invasion of the rights of ROIA.
Defendants urge that the constitution of ROIA expressly authorizes secession of its locals by unanimous consent of the members thereof because section 22 provides that a local cannot withdraw or dissolve so long as seven members in good standing object thereto. I am not inclined, however, at least in the absence of some more positive indication of intent, to adopt the view that the mere negative statement that a local cannot withdraw or dissolve so long as seven members object thereto is equivalent to an affirmative provision that a local may withdraw or dissolve upon the consent of all members or whenever less then seven members object.
The chartering of a local by an international undoubtedly is the conferring of a privilege, and privileges generally may be surrendered at will; but by accepting the charter the local, I think, assumes at least some measure of a duty of loyalty to the international, and at least a duty not to instigate or participate in tortious interference with the international’s contractual relations with other persons. It doubtless could not or should not be held that by accepting the charter the members *460 of the local irrevocably bind themselves to keep the local in existence for the rest of time, but it seems to me just as inadmissible to say that they remain free to withdraw from the International at their own whim or caprice.
I am not here confronted, however, with the bald, bare, abstract question of the right of a local to secede from its international, for here there was in existence when the attempted secession took place a valid contract between RCIA and Metropolitan Package Store Association, and the attempted secession was accompanied by the masking of a new contract on the same subject between that association and the new Local which was brought into being as a part of the plan to secede and as a part of the secession.
Neither that association nor the employers who composed it could perform both contracts, performance of the new one was a breach of the old one, and inducing the making of the new one was inducing a breach of the old one. There thus was not only a secession, but a secession accompanied by an interference with RCIA’s contractual relations with employers.
Granting to the fullest extent the right of employees to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities for the purpose of collective bargaining or other mutual aid or protection (N. Y. Labor Law, § 703; U. S. Labor Management Relations Act of 1947 [June 23, 1947, § 7]; U. S. Code, tit. 29, § 157), it is obvious, at least to me, that they validly may limit that right, and that they necessarily do limit it when they make a contract upon the subject. More specifically, when they make one union their bargaining representative and through that representative contract with their employers, they cannot avoid that contract by dissolving that union and joining another and then saying that they have merely exercised their right to change their representative. (Triboro Coach Corp. v. Labor Relations Bd., 286 N. Y. 314.)
I conclude, therefore, that the transformation of Local 906A into Local 122 affiliated with DR&WWIU, coupled with the making of the contract between Local 122 and Metropolitan Package Store Association, dated July 29, 1948, was a wrongful invasion of the rights of RCIA. The wrong, however, was a breach of contract, plus, perhaps, the tort of inducing a breach of contract — as to which see Hornstein v. Podwitz (254 N. Y. 443, 448); Campbell v. Gates (236 N. Y. 457, 460); Lamb v. Cheney & Son (227 N. Y. 418); Advance Music Corp. v. American Tobacco Co. (296 N. Y. 79), that breach has been accomplished, and the situation is not one in which the court can restore the *461 status quo ante, and I cannot see how any equitable relief can be given to plaintiff to relieve or right the wrong.
I am of the opinion that BCIA, not Local 906A, or Local 122, or DB&WWITJ, is the union which has the right to name a trustee of the insurance fund, and plaintiff accordingly can have judgment adjudging and declaring that 0 ’Grady has been properly removed as a trustee of that fund and that BCIA is entitled to designate a trustee thereof in his place, but except for such adjudication the complaint must be dismissed without prejudice to an action at law for damages and without costs; and I direct the entry of judgment accordingly.
The foregoing constitutes the decision required by section 440 of the Civil Practice Act and judgment is to be entered thereon.