ADELPHIA LODGE No. 1, ETC., Plaintiff and Appellee, *v.* ADEL-PHIA LODGE No. 1, ETC., Defendant and Appellant.

No. 10241.   Argued December 1, 1950.—Decided May 4, 1951.

458

*Rafael Soltero Peralta* for appellant.   *Enrique Báez García* for appellee.

MR. JUSTICE SNYDER delivered the opinion of the Court.

This suit for a declaratory judgment involves a controversy between two groups.   Each of them claims (1) that it

is entitled to use the name Adelphia Lodge No. 1, and (2) that it is the owner of a building and other property in Mayagüez which belong to that Masonic Lodge. After a trial on the merits, the district court entered judgment in favor of the plaintiff group and the defendant appealed.

A statement of the essential facts which are not in dispute is necessary for an understanding of the errors which the appellant assigns. The Grand Sovereign Lodge of Free and Accepted Masons of Puerto Rico is a confederation of subordinate or affiliated lodges which was organized in 1885. The Adelphia Lodge No. 1 was in existence prior to the organization of the Grand Lodge and joined the Grand Lodge as its first affiliate in 1885. On July 31, 1913 the Adelphia Lodge was registered as a non-profit association under Act No. 22, Laws of Puerto Rico, 1911. Both prior and subsequent to that date it has continued to function under the name "Worshipful Adelphia Lodge No. 1 established in Mayagüez, Puerto Rico, under the jurisdiction of the Most Worshipful Grand Sovereign Lodge of Puerto Rico."

Article 1 of the by-laws of the Adelphia Lodge, adopted in 1919, reads as follows: "The Worshipful Adelphia Lodge No. 1 is a masonic and charitable association, domiciled in the City of Mayagüez, Puerto Rico, under the jurisdiction of the Most Worshipful Grand Sovereign Lodge of Puerto Rico, to whose constitutional provisions it is subject . . . . . ." The Adelphia Lodge thus became subject to (1) its own charter and by-laws, (2) the Constitution of the Grand Lodge, (3) the Statutes of the Grand Lodge, and (4) the Regulations, Laws and Decrees of the Grand Lodge.

In 1912 a lot was acquired in Mayagüez which was recorded in the Registry of Property in the name of Adelphia Lodge No. 1 "constituted under the jurisdiction of the Most Worshipful Sovereign Lodge of Puerto Rico". In 1912 a building was constructed on this lot by the Adelphia Lodge. The building has been used for the purposes of Adelphia Lodge

since that date. It has been equipped with all the furniture necessary for the masonery work of the lodge and all its files and books are located there.

The charter and by-laws of Adelphia Lodge provide that its regular sessions shall take place weekly on Wednesday nights. Article 6 of the by-laws also provides that ". . . in addition, special meetings will be held on the dates which are fixed therefor, in accordance with the necessity and urgency of the case."

At the regular session of Adelphia Lodge held on May 12, 1948, a majority of the members present, headed by the Worshipful Master Bartolo Rivera and other officers, passed a resolution whereby the Adelphia Lodge purported to withdraw from the jurisdiction of the Grand Lodge and declared that all connection between it and the Grand Lodge was broken. There were present at that session the Worshipful Master and 29 members. The Worshipful Master and 27 members voted in favor of the resolution and 2 members voted against it. The resolution was submitted the same night on which it was passed without any previous notice to the members. Before it was passed, a proposition to call a special meeting to decide the question was defeated.

On May 19, 1948, 16 of the members who voted for the aforesaid resolution, together with 4 other members who had not participated in the previous meeting, unanimously agreed, acting as the Adelphia Lodge, to join the Gran Oriente Nacional de Puerto Rico, a confederation of masonic lodges recently organized in the island. This faction of Adelphia Lodge, which purported to withdraw, as the Adelphia Lodge, from the Grand Sovereign Lodge and to join the Gran Oriente Nacional, is the defendant in this case. Since that date it has been using the name "Adelphia Lodge No. 1", with a phrase "under the jurisdiction of the Gran Oriente Nacional de Puerto Rico", which was thereafter replaced by the phrase "*constituyente* of the Gran Oriente Nacional de Puerto Rico."

The defendant group has retained and used the building, files and documents belonging to the Adelphia Lodge since that date.

On May 16, 1948, 66 members of the original Adelphia Lodge, having learned of the resolution of withdrawal of May 12, 1948, filed an appeal to the Grand Lodge, invoking Art. 160 of the Statutes and praying for review and revocation of the resolution. This appeal was duly notified to the Worshipful Master, Bartolo Rivera. After hearing the appeal, on May 21, 1948 José G. Bloise, the Grand Master of the Grand Lodge, issued Decree No. 4 declaring "null and ineffective" the resolution of withdrawal. In a special session on May 23 the Grand Lodge expelled the officials and members who had voted for the resolution of withdrawal "as members of the order and therefore as members of Adelphia Lodge". On May 28, 1948 Grand Master Bloise issued Decree No. 5 declaring that the posts of the officers of Adelphia Lodge had been vacant from May 13, 1948 and directing Adelphia Lodge to cite the members as soon as possible for partial elections pursuant to Art. 114 of the Statutes. Pursuant to this Decree, after due notice, 40 members of Adelphia Lodge met in the temple of "Logia Porvenir de Puerto Rico, No. 88" in Mayagüez on June 2, 1948 and elected officers to replace those who had been expelled. Dr. Francisco Llavat was elected Worshipful Master and he and the others who were elected as officers were recognized and installed by the representative of the Grand Lodge.

This faction, which remained loyal to the Grand Lodge and which is the plaintiff in this case, has been celebrating its sessions in the building of the Logia Porvenir by courtesy of the latter and by dispensation of the Grand Lodge. It has been functioning with the same name and in the same manner as the Adelphia Lodge did prior to May 12, 1948, but without access to the building and other properties which the defendant is retaining and using.

After finding the foregoing facts, the district court stated in its opinion that the controversy was reduced to the problem of whether the resolution of May 12, 1948 withdrawing from the Grand Lodge was valid. The lower court then discussed the jurisdiction of the court and the procedure, holding that it could pass on the merits of the case and that a declaratory judgment was the appropriate remedy.

On the merits, the lower court held that nothing in the charter and by-laws of the Adelphia Lodge and the Constitution, Statutes, Regulations and Laws of the Grand Lodge authorized the Adelphia Lodge to withdraw from the Grand Lodge. According to the lower court, an affiliated lodge could be separated from the Grand Lodge only by dissolution pursuant to Article 12, par. II of the Constitution. That provision requires a ⅔ vote of the members present at an extraordinary meeting called for that purpose.[1] The resolution of withdrawal of May 12, 1948 was not enacted at an extraordinary meeting called for that purpose. The lower court therefore held that even assuming Art. 12, par. II authorized withdrawal as well as dissolution, the resolution in question did not terminate the jurisdiction of the Grand Lodge over Adelphia Lodge.

The lower court then states that "The defendant does not discuss the right of the Grand Lodge to expel its members in appropriate cases nor the procedure followed in the instant case as well as the manner in which the new officials were elected on June 2, 1948, limiting itself to denying the juris-

---

[1] Article 12, par. II, reads as follows:
"Lodges may be dissolved only
"I.      .      .      .      .      .      .      .
"II. By voluntary surrender of the Charter, agreed on by two thirds of the members present at an extraordinary meeting called for that purpose. The Charter will be delivered to the Grand Master, or to his Delegate, and the former may deliver it to seven or more Master Masons who are entitled to enjoy their masonic rights, provided they request the same within sixty days from the said date and that, in the judgment of the Grand Master, they possess all the conditions necessary for the management and government of the lodge."

diction of the Grand Lodge over the Adelphia Lodge after the resolution of May 12. The court having arrived at the conclusion that the said resolution was null and without effect, it follows that after that date all the members of the Adelphia Lodge remained under the jurisdiction of the Grand Lodge and subject to the corresponding disciplinary measures. The action of the Grand Lodge as to expulsion and as to election of the new officials, in the absence of a showing to the contrary, has the presumption of correctness and regularity. Article 102, pars. 15, 19, 20 and 32 of the Law of Evidence." The lower court went on to add that the expulsion was not necessary, as those approving the resolution of May 12, 1948 put themselves out of the Adelphia Lodge. And once the posts of the officers thus became automatically vacant, the election of new officials was a routine matter.

■ Before embarking on a discussion of the errors, we think it appropriate to point out that neither party disputes the fact that the courts may entertain suits which would otherwise involve the internal affairs of a voluntary association, if as in this case property rights are involved. *Adelphia Lodge No. 1* v. *Grand Sovereign Lodge of P. R.,* 41 P.R.R. 442; Wrigtington, Unincorporated Associations and Business Trusts, p. 320. For an even more liberal rule as to protection of rights of members in such an association, see *Berrien* v. *Pollitzer*, 165 F. 2d 21 (C.A., D.C., 1947); Annotation, 175 A.L.R. 438, 508 *et seq.* *Cf.* Note, Judicial Intervention in Internal Affairs of Labor Unions, 14 U. of Chi.L.Rev. 479.

■■ The first assignment is that the lower court erred in holding that Adelphia Lodge "was impeded from withdrawing from the confederation of the Grand Sovereign Lodge of Puerto Rico and that consequently the resolution of May 12, 1948 was an *ultra vires* act, of no effect and lacking in legal validity." The second assignment is that the lower court erred in holding that, assuming Adelphia Lodge could

withdraw from the Grand Lodge without being dissolved, this action could not be taken at an ordinary meeting, but required an extraordinary meeting called for that purpose. We consider these two errors together.

The appellant points out that the status of a mason is voluntary, and that no individual member of a lodge may be compelled against his will to remain a member thereof. We upheld this doctrine when we pointed out in *Luce & Co., S. en C.* v. *Labor Relations Board*, 71 P.R.R. 335, 348, that "A voluntary association may not validly provide that an indispensable requisite for withdrawal therefrom is acceptance of a resignation." [2] But the controversy here is not whether certain individuals may or may not withdraw from a particular lodge. Rather the question is (*a*) whether a subordinate lodge may terminate its affiliation with a Grand Lodge; and (*b*) if so, what procedure is required to accomplish it.

The constitution and by-laws of a private association are a contract between the members or between the association and its members. In the same way, the relationship between an affiliated lodge and the parent lodge is contractual in nature. *Order of Travellers* v. *Wolfe*, 331 U. S. 586, 605; *Polin* v. *Kaplan*, 257 N. Y. 277 (1931); Annotation, 94 A.L.R. 639; *Cromwell* v. *Morrin*, 91 N.Y.S. 2d 176, 179 (S.Ct., 1949); *Ray* v. *Brotherhood of Railroad Trainmen*, 44 P. 2d 787 (Wash., 1935); *Union Benev. Soc. No. 8* v. *Martin*, 67 S. W. 38 (Ky., 1902); Wrightington, *supra*, § 56, p. 310; .1 Williston on Contracts, p. 80; Note, 63 Harv.L.Rev. 1413, 1414. See Petro, The UE–CIO Controversy in the Courts, Labor Law Journal, March, 1951, p. 163; Note, 34 Minn.L.Rev. 357, 358; *Clark* v. *Fitzgerald*, 93 N.Y.S. 2d 768 (S.Ct., 1949). As already noted, Art. 1 of the by-laws of Adelphia Lodge provides that it is subject to the Constitution, Statutes and Regulations of the Grand Lodge. Accord-

---

[2] Article 1, par. XIX of the Masonic Constitution preserves the right of the individual Mason to withdraw from a lodge.

ingly, disaffiliation by Adelphia Lodge from the Grand Lodge must be pursuant thereto, unless they contain something contrary to public policy. See §1207, Civil Code, 1930 ed.

Art. 8 of the by-laws of Adelphia Lodge provides that "All the members of the Lodge have duties and rights expressly established in the Constitution, Statutes and other Laws of the Grand Sovereign Lodge of Puerto Rico . . . ". The Constitution of the Grand Lodge provides in Art 1, par. VIII that "The Grand Lodge governs exclusively and in a sovereign manner the association of Masonry in its jurisdiction, and is formed by the confederation of the lodges", and in par. X that the lodges will administer "its affairs . . . in accordance with the laws of the Grand Lodge . . . ". Art. 9 provides that "The Lodges may make an agreement as to any matter within their competence and for administration of their affairs, provided it is not contrary to any statutory or constitutional precept . . . ". Art. 13 provides that among the "fundamental duties of the lodges" is the duty "to comply faithfully and strictly with the . . . Constitution, Statutes and other General Laws which the Grand Lodge promulgates . . . ".

Article 128 of the Statutes provides that "in no case" will there be permitted in the sessions of the lodges "discussion of propositions contrary to the sovereignty . . . of the Grand Lodge . . . ". And Art. 160 of the Statutes establishes the right of appeal to the Grand Master and from him to the Grand Lodge from any agreement of one of the lodges.[3]

We need not go so far as to hold, as did the lower court, that the recited provisions make a subordinate lodge "an agent of the principal lodge rather than an independent

---

[3] Art. 160 reads as follows: "The preceding article does not prevent any of those present from protesting against any agreement. He that does so may appeal to the Grand Master, and from the resolution of the latter, to the Grand Lodge . . . The brother who was not present at a deliberation or resolution, has the same remedy, without the necessity of protesting to the Lodge."

entity". Likewise, we need not hold that there is no right of withdrawal by the affiliated lodge from the parent lodge except by dissolution. It is enough for purposes of this case to say that assuming there is a right of withdrawal, it must be done pursuant to the Constitution and Statutes of the Grand Lodge.

◼ There is no provision in the documents which define the relationship between the Adelphia Lodge and the Grand Lodge with reference to withdrawal as such. However, this does not mean, as the appellant contends, that the right of withdrawal may be exercised in the unfettered discretion of a majority of the members of Adelphia Lodge who happened to be present at an ordinary meeting held without notice that the issue of withdrawal would be considered at that meeting. To so hold would be to ignore all of the quoted provisions of the Constitution and Statutes of the Grand Lodge and the by-laws of the Adelphia Lodge which place the latter in a subordinate position to the former. More important, it would prejudice the rights of the overwhelming majority of the members who were absent and had no notice that the question of withdrawal would come up at an ordinary meeting. We agree with the lower court that "it does not seem equitable or just that the destinies of the Adelphia Lodge and the rights of its one hundred and thirty-six (136) members should be at the mercy of four (4) members who at a given moment might constitute the majority of a quorum of seven (7) master masons authorized by Article 117 of the Statutes to constitute an ordinary session or gathering." *Sabourin* v. *Lippe*, 81 N. E. 282 (Mass., 1907); *Suffridge* v. *O'Grady*, 84 N.Y.S. 2d 211, 216–17 (S.Ct., 1948), and cases cited. *Cf.* Note, 63 Harv.L.Rev. 1413, 1414, and cases cited in footnotes 10 and 11.

◼ In view of the foregoing, the only provision on which the appellant could possibly rely as to the question of withdrawal is Art. 12, par. II of the Constitution of the Grand Lodge. See footnote 1. As already noted, par. II is couched

in terms of dissolution rather than withdrawal. But assuming without deciding that this paragraph is applicable and interpreting it as liberally as possible in favor of the appellant, at the most it would enable the Adelphia Lodge to withdraw from the Grand Lodge pursuant to a ⅔ vote of its members at a special meeting called for that purpose. *Cf.* Art. 11 of Act No. 22 of 1911. And that did not occur here.

We cannot agree with the appellant that under other provisions of the by-laws of Adelphia Lodge and of the Constitution and Statutes of the Grand Lodge, the former could disaffiliate from the latter by a majority vote at an ordinary meeting without notice. The appellant relies on Art. 116 of the Statutes which permits "all type of masonic work" at ordinary meetings, and on Art. 125 which lists the "order of work" as including "Propositions". He argues that these Articles demonstrate that any proposition can be considered at an ordinary meeting except those which are specifically required to be considered at extraordinary meetings; namely, elections and dissolution pursuant to Art. 12, par. II. We think what we have already said answers this contention.

The appellant also points to Art. 48 of the by-laws of Adelphia Lodge and Arts. 141 and 142 of the Statutes of the Grand Lodge, which were available to the members of the plaintiff group if they wished to revoke the resolution of May 12, 1948. We assume that this could have been done. But by the same token the plaintiff was also entitled to use the alternative method of appeal to the Grand Master pursuant to Art. 160 of the Statutes. To argue, as the appellant does, that Art. 160 was not applicable because Adelphia Lodge was already outside the jurisdiction of the Grand Lodge under its resolution of May 12, is to put the cart before the horse. The question of whether the resolution of May 12 had been properly enacted was precisely the question on appeal.

We need not stop to determine what would have been the effect of the appeal to the Grand Master from the resolution of May 12 and his making the said resolution null and void if the resolution had been passed in accordance with the by-laws of Adelphia Lodge and the Constitution and Statutes of the Grand Lodge. The resolution as already seen was wholly invalid; the Decree No. 4 of the Grand Master in effect was merely declaratory of the said invalidity.

■ Where as here two rival groups both claim to be an organization which owns property, the courts ordinarily award the property to that group which has operated within the framework prescribed by the constitution and by-laws which are the contract governing the organization. *Suffridge* v. *O'Grady, supra; Di Silvestro* v. *Sons of Italy Grand Lodge*, 222 N.Y.S. 203, 215–16 (S.Ct., 1927) ; *Sabourin* v. *Lippe, supra; Schriner* v. *Sachs*, 98 A. 724, 726 (Pa., 1916) ; *Union Benev. No. 8* v. *Martin, supra; Gorman* v. *O'Connor*, 26 A. 379 (Pa., 1893) ; *Mc Fadden* v. *Murphy*, 21 N. E. 868 (Mass., 1889) ; *Lumber and Sawmill, Etc.* v. *International W. W., Etc.*, 85 P. 2d 1099 (Wash., 1938) ; Note, 47 L.R.A. (N. S.) 927; Note, The Legal Consequences of Labor Union Schisms, 63 Harv.L.Rev. 1413, 1414; Note, Labor Union Funds and Secessionists, 33 Ill.L.Rev. 977; Note, 33 Minn. L.Rev. 156, 166. *Cf.* Petro, The UE-CIO Controversy in the Courts, supra; Annotation, 131 A.L.R. 902. Under that rule the lower court did not err in entering a declaratory judgment that the property involved herein belonged to the plaintiff group.

■■ The appellant also argues that even if the Constitution or Statutes of a Masonic organization empower a Grand Lodge to dissolve a lodge, annul its charter, or confiscate its property, these provisions are null with reference to a lodge incorporated under the laws of a State. Consequently, according to the appellant, an incorporated lodge continues to exist, apart from the confederation, and to hold title to its property, even if its charter is revoked and the

parent lodge attempts to forfeit its property pursuant to the Constitution thereof.

But the Grand Lodge has not attempted to revoke the charter of the Adelphia Lodge. Nor has it forfeited its property to the Grand Lodge. The Adelphia Lodge continues to retain its property and its corporate existence. The only question is which group legally constitutes the Adelphia Lodge. This in turn depends on whether, under its "contract" with the Grand Lodge, Adelphia Lodge validly withdrew as an affiliated lodge from that confederation. The authorities cited by the appellant on this point are therefore wholly inapplicable.[4]

In fact, what we have already said demonstrates that the status of Adelphia Lodge as a juridical entity has no bearing on this case. That is to say, neither party relies on any specific steps which were purportedly taken or not taken under Act No. 22 of 1911. On the contrary, the only question is whether the defendant group took the proper steps which resulted in a valid disaffiliation of Adelphia Lodge from the Grand Lodge. And, as already noted, both parties rely on specific provisions of the Constitution and Statutes of the Grand Lodge, and the by-laws of the Adelphia Lodge, and not on the provisions of Act No. 22 of 1911. The result is that, without reference to the latter Act, which might be invoked in an appropriate case, the question before us is controlled by the "contract" between Adelphia Lodge and the Grand Lodge. And, generally speaking, we know of no reason of public policy why a voluntary association of this nature may not make such a contract with reference to its affiliation, even though title to its property is for

---

[4] On the question of forfeiture of property, see Petro, The UE-CIO Controversy in the Courts, *supra;* Note, 63 Harv. L. Rev. 1413; Note, Labor Union Funds and Secessionists, 33 Ill. L. Rev.. 977; Note, Intra-Union Disputes Concerning Union Funds, 47 Yale L. J. 483; Wrightington, *supra,* p. 356; Note, 33 Minn. L.Rev. 156, 167; Note, 34 Minn. L. Rev. 357. *Cf. United States Sav. Bank of Newark* v. *Schiller Lodge No. 66, F. & A. M. et al.,* 176 A. 330 (N. J., 1935).

formal and technical reasons in the name of an association organized under Act No. 22. The Adelphia Lodge, in short, may play a dual role, as a subordinate lodge of the Grand Lodge and as an association registered under Act No. 22. See *State* v. *Frater*, 228 P. 295, 296 (Wash., 1924); *McFadden* v. *Murphy, supra; Union Benev. Soc. No. 8* v. *Martin, supra.*

The third assignment is that the lower court erred in holding that the actions of the Grand Master (*a*) in expelling the members who voted in favor of the resolution of May 12, 1948, (*b*) in declaring the offices of the lodge vacant, and (*c*) in ordering new elections therefor were valid. In support of this assignment, the appellant cites the Annotation at 94 A.L.R. 639 to the effect that members of a fraternal order may not be expelled therefrom without notice and a hearing.

Expulsion of members of a voluntary association is ordinarily a matter of internal discipline with which the courts will not interfere. *Rivera* v. *Labor Relations Board*, 70 P.R.R. 320, 326, footnote 4; *Luce & Co., S. en C.* v. *Labor Relations Board*, 71 P.R.R. 335, 350; *Adelphia Lodge No. 1* v. *Grand Sovereign Lodge, supra; Polin* v. *Kaplan, supra; MacPherson* v. *Green*, 72 N.Y.S. 2d 790 (S. Ct., 1947). However, even if the case is one in which the courts will interfere, the aggrieved parties must ordinarily show that they have exhausted their remedies within the organization before they may resort to the courts. Annotation, 168 A.L.R. 1462; *Polin* v. *Kaplan, supra; Tesorero* v. *Miller*, 88 N.Y.S. 2d 87 (App. Div. 1949); *Cromwell* v. *Morrin, supra; Wrightington, supra*, p. 315. *Cf.* Note, 20 Minn.L.Rev. 657, 659, reprinted in Handler, Cases on Labor Law; Note, 14 U. of Chi.L.Rev. 416; *Washington Local Lodge* v. *International Brotherhood*, 203 P. 2d 1019 (Wash., 1949); *Leo* v. *Local Union No. 612, Etc.*, 174 P. 2d 523 (Wash., 1946); *Cox* v. *United Brotherhood of Carpenters, Etc.*, 69 P. 2d 148 (Wash., 1937). No such showing has been made here. On the con-

trary, the appellant failed to appeal from the Decree of the Grand Master to the Grand Lodge, as it was entitled to do under Art. 160 of the Statutes. We therefore never reach the question of the validity of the procedure used to expel the members of the defendant group.

In addition, the issue here is what group constitutes the Adelphia Lodge, not whether particular members were properly expelled or not. Finally, the question as to expulsion is academic in view of the fact that throughout this proceeding the members of the defendant group have consistently taken the position that they are not members of the lodge which is still affiliated with the Grand Lodge. Their action is tantamount to withdrawal from Adelphia Lodge as thus affiliated and they therefore cannot complain of the procedure used to expel them which merely served to confirm their own previous action. *Hamilton* v. *White*, 22 P. 2d 1089, 1092 (Ariz., 1933); *Gorman* v. *O'Connor*, *supra;* *McFadden* v. *Murphy*, *supra; Sabourin* v. *Lippe*, *supra.*

As to the action of the Grand Master in removing the officers of Adelphia Lodge who had voted in favor of the resolution of May 12, 1948 and calling for partial elections pursuant to Art. 114 of the Statutes, the question is now moot in view of the fact that these officers have been replaced by the annual elections which presumably were thereafter held pursuant to Art. 98 of the Statutes.

The fourth assignment is that the lower court erred in holding that the plaintiff group had exhausted its remedies within the masonic order before resorting to the courts. Here once more the appellant contends that the remedy was reconsideration of the resolution of May 12, 1948 pursuant to Arts. 141 and 142 of the Statutes of the Grand Lodge. But we have already seen that Art. 160 entitled the plaintiff to appeal to the Grand Master without asking for reconsideration. We therefore agree with the lower court that the plaintiff group, having appealed pursuant to Art. 160, had exhausted its remedy within the organization, as re-

quired by the cases. Indeed, the plaintiff group is merely asking the courts to implement the ruling which it was successful in obtaining from the Grand Master on appeal from the resolution of May 12.

The fifth assignment is that the lower court erred in deciding that if the resolution of May 12 were upheld, the rights of the masons who remained faithful to the Grand Lodge would be prejudiced. The appellant argues here that the plaintiff group can simply continue to be affiliated with the Grand Lodge under some name other than Adelphia Lodge. But that contention overlooks the two important questions which precipitated this litigation: (1) the title to the property of Adelphia Lodge; (2) the right to use the name, Adelphia Lodge. And, as we have already seen, the members of the minority group, who made an unsuccessful effort to secede from the Grand Lodge and who also in effect withdrew from the Adelphia Lodge as affiliated with the Grand Lodge, cannot claim either title to the property of Adelphia Lodge or the right to use that name.

The sixth error relates to the award of attorney's fees of $500 to the plaintiff. We are unable to see in what way the lower court abused its discretion in making this award.

The judgment of the district court will be affirmed.